# 24-0423-cv

## 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### *for the*

## 𝔖𝔢𝔠𝔬𝔫𝔡 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

CITIBANK, N.A.,

*Plaintiff-Appellee,*

ONE57 36B, LLC, ARALPA MIAMI INVESTMENTS, LLC,

*Appellants,*

– v. –

ARALPA HOLDINGS LIMITED PARTNERSHIP,
RODRIGO LEBOIS MATEOS,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANTS-APPELLANTS ARALPA HOLDINGS LIMITED PARTNERSHIP AND RODRIGO LEBOIS MATEOS AND APPELLANTS ONE57 36B, LLC AND ARALPA MIAMI INVESTMENTS, LLC

DANIEL J. SAVAL
LARA LEVINSON
KOBRE & KIM LLP
*Attorneys for Defendants-Appellants
  Aralpa Holdings Limited Partnership
  and Rodrigo Lebois Mateos and
  Appellants One57 36B, LLC and
  Aralpa Miami Investments, LLC*
800 Third Avenue
New York, New York 10022
(212) 488-1200

CP COUNSEL PRESS    (800) 4-APPEAL • (330100)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellants in this action, Aralpa Holdings Limited Partnership and Rodrigo Lebois Mateos, state that they do not have a corporate parent. Third Party-Appellants in this action, One57 36B, LLC and Aralpa Miami Investments, LLC, state that the corporate parent of each is Aralpa Capital S.A. de C.V. There is no publicly held corporation that owns 10 percent or more of any Appellants' or Aralpa Capital S.A. de C.V.'s stock.

Dated: May 28, 2024
      New York, New York

                                 */s/ Daniel J. Saval*
                                 Daniel J. Saval

                                 *Attorney for Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................1

JURISDICTIONAL STATEMENT .........................................4

ISSUES PRESENTED..............................................................5

STATEMENT OF THE CASE....................................................5

I.     Citibank Extends a Loan to Aralpa Holdings Guaranteed by Lebois and Secured by Collateral Other Than the Assets of Aralpa Miami and One57 ...................................................................5

II.    Third Parties Aralpa Miami and One57 Are Limited Liability Companies Formed Years Before the Judgment and Owned by Non-Debtor Mexican Corporation Aralpa Capital ..................................6

III.   Aralpa Miami and One57 Purchase and Hold Real Estate with Mortgage Loans that Citibank Provides ..........................................8

IV.   During the Term of the Note Lebois Provides Citibank with Personal Financial Statements that Include "Personal and Other" Income and Information Including Information About the Third Party Assets ...................................................................9

V.    Citibank Expressly Acknowledges that Lebois Is Not the Owner of the Third Party Assets....................................................9

VI.   Prior to the Maturity Date of the Note, Citibank Brings Suit Claiming a Technical Default and Obtains Judgment on the Pleadings Against Aralpa Holdings and Lebois...........................................10

VII.  Citibank Moves *Ex Parte* to Enforce the Judgment Against Third Parties Aralpa Miami and One57 and the District Court Grants Temporary Relief.....................................................11

VIII. The District Court Grants Summary Relief After Citibank Abandons Its Allegation of Fraud and After a Hearing Without Live Testimony ..................................................................12

IX.   Defendants Appealed and the District Court Entered a Stay Pending Appeal.......................................................................13

i

SUMMARY OF ARGUMENT ....................................................................14

STANDARDS OF REVIEW .....................................................................15

ARGUMENT ..............................................................................................17

I.   The District Court Erred as a Matter of Law by Applying New York Law Rather than the Law of the State of Formation to Reverse Pierce the Corporate Veil of Georgia Limited Liability Company Aralpa Miami .....................................................................................17

    A.   The District Court Erred by Ignoring the Rule that the Law of the State of Incorporation Determines When the Corporate Form Will Be Disregarded for Reverse Veil Piercing .......................20

    B.   Even if an Interest Analysis Were Required, the District Court Erred in Concluding that Citibank Has Rebutted the Presumption that the Law of the State of Incorporation Governs .............................................................................................24

II.   The District Court Erred as a Matter of Law by Not Requiring Citibank to Reverse Pierce the Corporate Veil of Each Entity in the Corporate Structure to Reach the Assets of Aralpa Miami and One57 .....................................................................................................28

    A.   The District Court Erred by Not Requiring Veil Piercing at Every Layer of Ownership .................................................................28

    B.   The District Court Erred in Considering Equitable Ownership to Avoid Piercing Each Layer in the Corporate Structure .................31

III.   The District Court Erred in Concluding that Citibank Had Satisfied Its High Burden to Establish the Required Factors to Reverse Pierce the Corporate Veil and Enforce the Judgment Against Aralpa Miami and One57 .....................................................................................................33

    A.   The District Court Erred as a Matter of Law in Holding that Lebois Exercised Complete Domination over the Third Parties .........................................................................................34

    B.   The District Court Erred as a Matter of Law in Holding that the Third Parties Were Used to Commit a Fraud or Wrong ..............38

CONCLUSION ..........................................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*138-77 Queens Blvd LLC v. Silver*,
    682 F. Supp. 3d 271 (E.D.N.Y. 2023) .................................................... 35, 36

*Acree v. McMahan*,
    585 S.E.2d 873 (Ga. 2003) ...................................................... 19, 22, 25

*Alpine View Co. v. Atlas Copco AB*,
    205 F.3d 208 (5th Cir. 2000) ...................................................29

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
    122 F.3d 130 (2d Cir. 1997) ...................................................... 18, 34, 36

*Atateks Foreign Trade, Ltd. v. Priv. Label Sourcing, LLC*,
    402 F. App'x 623 (2d Cir. 2010) ........................................... 16, 34

*Automotriz De Golfo De Cal. S.A. v. Resnick*,
    47 Cal. 2d 792 (Cal. 1957) .....................................................36

*Bank of New York v. Yugoimport*,
    745 F.3d 599 (2d Cir. 2014) .....................................................24

*Brenner v. Philips, Appel & Walden, Inc.*,
    No. 93 Civ. 7838 (JFK), 1997 WL 33471053
    (S.D.N.Y. July 22, 1997) .....................................................29

*Church Joint Venture, LP v. Blasingame*,
    947 F.3d 925 (6th Cir. 2020) .....................................................18

*Circle Indus. USA v. Parke Constr. Grp., Inc.*,
    183 F.3d 105 (2d Cir. 1999) .....................................................26

*Cmty. & S. Bank v. Lovell*,
    807 S.E.2d 444 (Ga. 2017) .....................................................19

*Commodity Futures Trading Comm'n v. Walsh*,
    712 F.3d 735 (2d Cir. 2013) .....................................................16

*Corrugated Replacements, Inc. v. Johnson*,
    797 S.E.2d 238 (Ga. Ct. App. 2017) .........................................19

*Cortland St. Recovery Corp. v. Bonderman*,
    187 N.Y.S.3d 602 (1st Dep't 2023)...........................................24

*Cortlandt St. Recovery Corp. v. Bonderman*,
    96 N.E.3d 191 (N.Y. 2018) ............................................................34

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
    879 F.3d 462 (2d Cir. 2018) .........................................................16

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998) .............................................................16

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003)......................................................................18

*Donohue v. Hochul*,
    32 F.4th 200 (2d Cir. 2022) .........................................................23

*Feitshans v. Kahn*,
    No. 06 Civ. 2125 (SAS), 2007 WL 2438411 (S.D.N.Y. Aug. 24,
    2007) ............................................................................................39

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*,
    552 F. App'x 13 (2d Cir. 2014) ...................................................20

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) .........................................................20

*Flores v. Bodden*,
    488 F. App'x 770 (5th Cir. 2012).................................................35

*Freeman v. Complex Computing Co., Inc.*,
    119 F.3d 1044 (2d Cir. 1997) ............................................... 16, 31

*Gottlieb v. County of Orange*,
    84 F.3d 511 (2d Cir. 1996) ...........................................................41

*Great Atl. & Pac. Tea Co. v. 380 Yorktown Food Corp.*,
    No. 16-cv-5250 (NSR), 2020 WL 4432065 (S.D.N.Y. 2020) .....38

*Greenspun v. Lindley*,
    330 N.E.2d 79 (N.Y. 1976) ..........................................................22

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) .........................................................33

*Guptill Holding Corp v. New York*,
    307 N.Y.S.2d 970 (3d Dep't 1970), *aff'd*,
    292 N.E.2d 782 (N.Y. 1972) ........................................................40

*Hau Yin To v. HSBC Holdings, PLC*,
    700 F. App'x 66 (2d Cir. 2017) .......................................................22

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
    270 F. Supp. 3d 716 (S.D.N.Y. 2017) ..................................... 24, 31

*Imagineering, Inc. v. Lukingbeal*,
    94 Civ. 2589 (RLC), 1997 WL 363591 (S.D.N.Y. June 30, 1997)..............30

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    679 F. Supp. 2d 395 (S.D.N.Y. 2009) ............................................29

*In re Bernard L. Madoff Inv. Sec. LLC*,
    583 B.R. 829 (Bankr. S.D.N.Y. 2018) ............................. 23, 24, 27

*In re BH S & B Holdings LLC*,
    420 B.R. 112 (Bankr. S.D.N.Y. 2009), *aff'd as modified*,
    807 F. Supp. 2d 199 (S.D.N.Y. 2011) ............................................30

*In re Heritage Org.*,
    413 B.R. 438 (Bankr. N.D. Tex. 2009) .........................................29

*In re Knight*,
    574 B.R. 800 (Bankr. N.D. Ga. 2017) .........................................19

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
    998 F. Supp. 2d 157 (S.D.N.Y. 2014), *aff'd*,
    611 F. App'x 34 (2d Cir. 2015)......................................................22

*In re Nilhan Fin., LLC*,
    652 B.R. 381 (Bankr. M.D. Fla. 2023) .........................................19

*In re Platinum & Palladium Antitrust Litig.*,
    61 F.4th 242 (2d Cir. 2023) .................................................. 20-21

*In re Servicom, LLC*,
    Nos. 18–31722 et al., 2021 WL 825155 (Bankr. D. Conn. Feb. 24,
    2021) ............................................................................... 29-30

*In re Tyson*,
    433 B.R. 68 (S.D.N.Y. 2010) .......................................................33

*In re Webster*,
    629 B.R. 654 (Bankr. N.D. Ga. 2021).........................................19

*Intercontinental Planning, Ltd. v. Daystrom, Inc.*,
    248 N.E.2d 576 (N.Y. 1969) .......................................................21

v

*Jones v. Goodrich Pump & Engine Control Sys., Inc.*,
  86 F.4th 1010 (2d Cir. 2023) ............................................................... 15, 37

*Judson Atkinson Candies v. Latini-Hohberger Dhiamantec*,
  529 F.3d 371 (7th Cir. 2008) ..............................................................28

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
  8 F.3d 130 (2d Cir.1993) ........................................... 21, 25, 27, 28

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)..............................................................................17

*Kosachuk v. Selective Advisors Grp., LLC*,
  827 Fed. App'x 58 (2d Cir. 2020) ..................................................20

*Lally v. Catskill Airways Inc.*,
  603 N.Y.S.2d 619 (3d Dep't 1993) ................................................31

*Levinson v. Kuwait Fin. House (Malaysia) Berhad*,
  44 F.4th 91 (2d Cir. 2022) ........................................................... 4, 16

*Licci ex. rel. Licci v. Lebanese Canadian Bank*,
  672 F.3d 155 (2d Cir. 2012) .......................................................... 17-18

*M.A. ex rel. H.R. v. Rockland Cnty. Dep't of Health*,
  53 F.4th 29 (2d Cir. 2022) ............................................................ 15, 32

*Morris v. N.Y. State Dep't of Tax'n & Fin.*,
  623 N.E.2d 1157 (N.Y. 1993) ................................... 18, 38, 39, 40

*NetJets Aviation, Inc. v. LHC Commc'n, LLC*,
  537 F.3d 168 (2d Cir. 2008) ............................................................18

*Norlin Corp. v. Rooney, Pace Inc.*,
  744 F.2d 255 (2d Cir. 1984) ......................................................... 17, 22

*Rotella v. Dener*,
  723 N.Y.S.2d 801 (4th Dep't 2001) ..............................................36

*Rupp v. Buffalo*,
  91 F.4th 623 (2d Cir. 2024) ..............................................................37

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ............................................................17

*Serio v. Ardra Ins. Co.*,
  761 N.Y.S.2d 1 (1st Dep't 2003)....................................................23

vi

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*,
   283 F.R.D. 142 (S.D.N.Y. 2012)........................................................29

*Soviet Pan Am Travel Effort v. Travel Committee, Inc.*,
   756 F. Supp. 126 (S.D.N.Y.1991) .....................................................21

*TNS Holdings, Inc. v. MKI Sec. Corp.*,
   703 N.E.2d 749 (N.Y. 1998) ..................................................... 33, 39, 40

*United States v. Bestfoods*,
   524 U.S. 51 (1998).............................................................................18

*Weyant v. Okst*,
   101 F.3d 845 (2d Cir. 1996) ..................................................... 26, 35, 37, 41

*William Wrigley Jr. Co. v. Waters*,
   890 F.2d 594 (2d Cir. 1989) .............................................................34

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
   611 F. Supp. 281 (S.D.N.Y. 1985), *aff'd in part, rev'd in part*,
   933 F.3d 131 (2d Cir.1991) ...............................................................30

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*,
   933 F.2d 131 (2d Cir. 1991) .............................................................34

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
   395 U.S. 100 (1969)...........................................................................30

## Statutes & Other Authorities:

28 U.S.C. § 1291 ......................................................................................4

28 U.S.C. § 1332(a)(2)..............................................................................4

CPLR § 6210 .........................................................................................11

Fed. R. Civ. P. 12(b)(2)...........................................................................17

Fed. R. Civ. P. 64 ..................................................................................11

Fed. R. Civ. P. 65(b) .............................................................................11

Fed. R. Civ. P. 69 ............................................................................ 11, 12

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 307 (1971)..............21

**INTRODUCTION**

This appeal arises from the District Court's unfounded decision to grant a writ of execution and turnover order against the assets of non-party limited liability companies to satisfy a judgment against an individual. The District Court ignored binding precedent of this Court and made a number of errors of law in granting the relief.

The judgment arises out of a $35 million loan that Citibank, N.A. ("Citibank" or "Plaintiff-Appellee") extended to Aralpa Holdings Limited Partnership ("Aralpa Holdings") and that was guaranteed by Rodrigo Lebois Mateos ("Lebois" and, together with Aralpa Holdings, "Defendants-Appellants"). In October 2022, before the loan had reached maturity, Citibank brought suit based on alleged technical events of default and, in September 2023, obtained a judgment against Aralpa Holdings and Lebois (the "Judgment").

But Aralpa Holdings and Lebois are not the targets of the motion for writ of execution and turnover order. Instead, Citibank seeks to reach the assets of Aralpa Miami Investments, LLC ("Aralpa Miami") and One57 36B, LLC ("One57" and, together with Aralpa Miami, the "Third Parties" or "Third Parties-Appellants") through the extraordinary relief of reverse veil piercing.

Aralpa Miami and One57 are corporate entities not parties to the loan or guaranty. They were formed at separate times and in separate jurisdictions, and were

doing business long before Citibank obtained or even sought the Judgment.

Aralpa Miami was formed in 2018 as a Georgia Limited Liability Company to purchase and hold real estate. One57 was formed earlier, in 2016, as a New York Limited Liability Company also to purchase and hold real estate. Citibank had its own relationship with these companies—it extended mortgage loans to both Aralpa Miami and One57 and both made mortgage payments to Citibank. The sole shareholder of both Aralpa Miami and One57 is Aralpa Capital S.A. de C.V. ("Aralpa Capital"), a Mexican corporation that Citibank did not name in these proceedings.

Citibank sought the extraordinary relief of "reverse veil piercing," and asked the court to disregard the corporate form so that it could collect assets from the companies ("Third Party Assets") in satisfaction of the Judgment against an individual. Citibank proceeded on the theory that Lebois should be deemed the alleged "equitable owner" of the Third Parties, and that it did not need to contend with the companies' legal owner—Aralpa Capital. The District Court erred in granting relief on this basis.

The District Court erred at the outset in its application of New York's choice of law principles, by ignoring binding authority from this Court requiring that the law of the state of incorporation applies to the issue whether to disregard the corporate form. Because Aralpa Miami is a Georgia Limited Liability Company,

2

the District Court should have applied Georgia law, which expressly prohibits reverse veil piercing.

The District Court further erred by not requiring Citibank to pierce the corporate veil of Mexican corporation Aralpa Capital, the legal owner of the Third Parties. The weight of authority requires piercing at every layer of the corporate structure. That is for good reason. The District Court's decision deprived Aralpa Capital of its interests, including its residual interests in the assets of Aralpa Miami and One57, without having its day in court. These due process considerations, and here the added potential for conflicts with Mexican law, mean Aralpa Capital should not simply be ignored and displaced by Lebois as the "equitable owner," as the District Court erroneously held.

Finally, the District Court erred in holding that Citibank met its high burden to establish the prerequisites for veil piercing—that Lebois exercised complete domination over the Third Parties or abused the corporate form. The District Court failed to consider, among other things, the nature of the businesses and the current management arrangements demonstrating that Lebois did not exert domination over the entities. The District Court also ignored unassailable evidence in the record that Citibank understood the Third Party Assets did not belong to Lebois, and so would not be wronged by adherence to the corporate form. Instead, the court drew improper inferences in favor of Citibank rather than view the record in the light most

3

favorable to Appellants, as it was required to do in this posture.

In sum, the record establishes that there is no basis to afford Citibank the extraordinary remedy of reverse veil piercing against Aralpa Miami or One57. The Court should reverse the Order.

## JURISDICTIONAL STATEMENT

Third Party-Appellant Aralpa Miami Investments, LLC, a Georgia Limited Liability Company, contests that the District Court or this Court possess personal jurisdiction over it. Aralpa Miami Investments, LLC specially appeared below and specially appears here for the limited purpose of contesting personal jurisdiction.

The District Court possessed subject matter jurisdiction over the veil piercing claims on the basis of diversity jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(2).

This Court possesses jurisdiction over the appeal because a district court order granting a motion for a writ of execution and turnover order is a final order appealable pursuant to 28 U.S.C. § 1291. *See Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 96 (2d Cir. 2022) (holding this Court has jurisdiction to hear appeal of order granting writ of execution as final order under section 1291). The District Court order on appeal is dated February 2, 2024; Appellants timely appealed on February 15, 2024.

## ISSUES PRESENTED

1.  Whether the District Court erred as a matter of law by applying New York law rather than the law of the state of formation to reverse pierce the corporate veil of Georgia Limited Liability Company Aralpa Miami.

2.  Whether the District Court erred as a matter of law by not requiring Citibank to reverse pierce the corporate veil of each entity in the corporate structure to reach the assets of Aralpa Miami and One57.

3.  Whether the District Court erred in concluding that Citibank had satisfied its high burden to establish the required factors to reverse pierce the corporate veil and enforce the Judgment against Aralpa Miami and One57.

## STATEMENT OF THE CASE

**I.      Citibank Extends a Loan to Aralpa Holdings Guaranteed by Lebois and Secured by Collateral Other Than the Assets of Aralpa Miami and One57.**

In 2017, Citibank and Lebois began discussing a private banking relationship. A-587.[1]  In the course of those discussions, Lebois provided financial and legal information to Citibank about, among other things, real estate, private investments, and assets owned not by Lebois, but by affiliated corporate entities.  A-587.

---

[1] "A" refers to the Joint Appendix.  "Dkt." refers to the District Court's docket entries.  "ECF No." refers to this Court's docket entries.  "SPA" refers to the Special Appendix.

After receiving that information, on June 16, 2017, Citibank agreed to provide Aralpa Holdings with a $20 million credit facility (the "<u>Note</u>"). SPA-8, A-519 (Note). Lebois personally guaranteed the Note (the "<u>Guaranty</u>"). SPA-8, A-506 (Guaranty).

The Note was amended four times, reflecting paydowns of $15 million in 2020. A-588. The final amendment, dated November 30, 2021, extended the maturity date to September 30, 2023, and set the loan amount at $35 million. SPA-9.

As the sole agreed upon collateral for the loan, Lebois pledged to Citibank his shares in Unifin Financiera S.A.B. de C.V. ("<u>Unifin</u>"), held through Spanish holding company Promexcap Spain S.L. A-17 (Complaint ¶ 15), A-21 (Answer ¶ 15).

## II.   Third Parties Aralpa Miami and One57 Are Limited Liability Companies Formed Years Before the Judgment and Owned by Non-Debtor Mexican Corporation Aralpa Capital.

The Third Parties targeted in this judgment enforcement action are limited liability companies formed years before Citibank obtained the Judgment or even filed suit. Aralpa Miami was formed on January 24, 2018, as a Georgia Limited Liability Company governed by the laws of the State of Georgia. SPA-4, A-290, A-298 (Aralpa Miami Operating Agreement §§ 2.1, 14.1). Aralpa Miami's principal place of business is Atlanta, Georgia and it has a registered office and registered agent in Georgia. SPA-23, A-290 (*Id.* §§ 2.3, 2.4).

Aralpa Miami's Operating Agreement states that Lebois and his daughter

6

Almudena Lebois Ocejo ("Ocejo") are the "initial managers" of Aralpa Miami. SPA-4, A-289 (*Id*. § 1). Ocejo currently serves as the only manager and handles "all operational matters and decisions" for the company. A-588 (Declaration of Almudena Lebois Ocejo ("Ocejo Decl.") ¶ 6). Aralpa Miami's sole member is Aralpa Capital. SPA-4, A-290 (Aralpa Miami Operating Agreement at 2).

One57 was formed on September 7, 2016, as a New York Limited Liability Company governed by the laws of the State of New York. SPA-3, A-73–74 (One57 Operating Agreement Preamble, § 15). One57's Operating Agreement states that the company "shall be managed by between Rodrigo Lebois and Almudena Lebois each as Manager." SPA-3, A-73 (One 57 Operating Agreement § 6). As with Aralpa Miami, Ocejo currently serves as the only manager and handles all operational matters and decisions for the company. SPA-5, A-588 (Ocejo Decl. ¶ 6). One57's sole member is also Aralpa Capital. SPA-4, A-73 (One57 Operating Agreement § 5).

Aralpa Capital is a Mexican corporation. SPA-4, A-80 (Organization Agreement Registered with Citibank for Aralpa Capital). Lebois previously served as its President and currently holds no position with the company; the Managing Directors are Ocejo and Gerardo Tietszch (who is unrelated to Lebois). SPA-4, A-588 (Ocejo Decl. ¶ 5).

### III. Aralpa Miami and One57 Purchase and Hold Real Estate with Mortgage Loans that Citibank Provides.

In addition to extending the Note to Aralpa Holdings guaranteed by Lebois, Citibank provided separate mortgage loans and banking directly to Aralpa Miami and One57. In July 2018, Citibank provided a $2.45 million mortgage to Aralpa Miami for real property it had purchased for $3.5 million located at 5034 Fisher Island Drive, Unit 5034, Miami Beach, Florida (the "Miami Property"). SPA-6, A-304.

Aralpa Miami also has a bank account with Citibank, which was used to pay the mortgage on the Miami Property. SPA-7, A-342. In February 2023, Aralpa Miami sold the Miami Property to a third-party purchaser for $8,925,000 and used a portion of the proceeds of the sale to pay off the Citibank mortgage. SPA-7, A-65. Aralpa Miami also has a bank account with UBS Financial Services, Inc. SPA-7, A-331.

In January 2018, Citibank provided a $5.22 million mortgage to One57 for the purchase of real property located at 157 West 57th Street, Unit 36B, New York, New York (the "New York Property"). SPA-5, A-88. One57 also has a bank account with Citibank, which has been used to pay the mortgage on the New York Property. SPA-6, A-118.

**IV.    During the Term of the Note Lebois Provides Citibank with Personal Financial Statements that Include "Personal and Other" Income and Information Including Information About the Third Party Assets.**

Under the Note and Guaranty, Lebois was to provide "Personal Financial Statements" to include "personal and other" income and information.  A-523 (Note ¶ 5, 11(r), Guaranty ¶ 9(c)).  Lebois provided those statements, some of which list assets of "Lebois and Family."  A-575.

The Miami and New York Properties were listed among these "personal and other" assets.  A-575 (listing "NY, NY" property worth $9.12 million and "Miami, FL" property worth $4.25 million).  The total value of the Miami and New York Properties together was listed as approximately $13 million—a tiny fraction of the total value of the assets listed of $631 million.  A-575.

**V.    Citibank Expressly Acknowledges that Lebois Is Not the Owner of the Third Party Assets.**

In September 2022, Citibank expressly acknowledged that the Third Party Assets are owned by limited liability companies that are, in turn, owned by a Mexican corporation.  Citibank acknowledged this when, as the Unifin collateral deteriorated, it attempted to have the assets of Aralpa Miami and One57 pledged as additional collateral.  A-596.  Citibank sent a term sheet proposing that, in "addition to all collateral already pledged, it would obtain a security interest in the following assets, among others:

9

> "1. That certain real property located at 157 West 57th St., Unit 36B, New York, New York 10019 **owned by One [sic] 36B LLC (owned 100% by Aralpa Capital**) ('One57')
>
> 2. That certain real property located at 5034 Fisher Island Drive, Miami Beach, FL 33109, **owned by Aralpa Miami Investments (owned 100% by Aralpa Capital**) ('Fisher Island')."

A-596 ("<u>2022 Term Sheet</u>") (emphasis added). Thus, though the Properties are listed in the Personal Financial Statements under "Personal Real Estate," Citibank understood that Lebois was not the legal owner. A-596 (*Id.*). Citibank and Lebois were unable to come to a deal in September 2022 to pledge these assets as additional collateral to secure the Note.

## VI. Prior to the Maturity Date of the Note, Citibank Brings Suit Claiming a Technical Default and Obtains Judgment on the Pleadings Against Aralpa Holdings and Lebois.

The following month, in October 2022 prior to the Note's maturity date, Citibank brought an action alleging technical defaults of the Note and Guaranty (*i.e.,* the alleged defaults were unrelated to any failure to make required payments of interest or principal). SPA-10. Citibank made no mention of the Third Party Assets in its Complaint alleging that Lebois defaulted on the loan by failing to maintain a sufficient net worth. A-18–19 (Complaint ¶ 36-41). On September 14, 2023, before any discovery, the District Court granted Citibank's motion for judgment on the pleadings. Dkt. 52. On September 15, 2023, the Court entered Judgment against Aralpa Holdings and Lebois in the amount of $35 million plus interest. Dkt. 55.

10

**VII. Citibank Moves *Ex Parte* to Enforce the Judgment Against Third Parties Aralpa Miami and One57 and the District Court Grants Temporary Relief.**

Citibank subsequently moved *ex parte* pursuant to Federal Rule of Civil Procedure 69 for a writ of attachment and writ of execution and turnover order to enforce the Judgment against Third Parties Aralpa Miami and One57. SPA-12. At the same time, Citibank sought a temporary restraining order ("TRO") to restrain the assets during pendency of the application. SPA-12.

Citibank argued that Aralpa Miami and One57 were alter egos of Lebois and sought to "reverse" pierce the corporate veil to reach through to the Third Party Assets in satisfaction of its Judgment against an individual, Lebois. Dkt. 77. Specifically, Citibank argued that Lebois completely dominated the entities and used that domination "to defraud" Citibank. Dkt. 77 at 14.

On December 15, 2023, based on these *ex parte* papers that alleged fraud, the District Court granted a TRO, citing Federal Rule of Civil Procedure 65(b). Dkt. 83. On December 19, 2023, the Court held a hearing at which counsel for Plaintiff and Defendants appeared and presented argument, and the Court granted a new TRO, this time citing Federal Rule of Civil Procedure 64 and NY CPLR § 6210. Dkt. 87.

11

**VIII. The District Court Grants Summary Relief After Citibank Abandons Its Allegation of Fraud and After a Hearing Without Live Testimony.**

On January 26, 2024, the District Court held an Order to Show Cause hearing on the motion for writ of execution and turnover order following briefing from the parties. A-601. Appellants explained in their pre-hearing submission that Aralpa Miami was a Georgia Limited Liability Company, thus whether to disregard the corporate form is governed by the law of Georgia, which prohibits reverse veil piercing. Appellants opposed the relief on the additional ground that Citibank was required to reverse pierce the corporate veil of the owner of Aralpa Miami and One57—Aralpa Capital—and did not even attempt to do so. Finally, Appellants challenged the allegations of domination and fraud. Dkt. 92.

In its pre-hearing Reply, Citibank abandoned its sole reliance on fraud, and argued instead that Lebois used the Third Parties to commit a "fraud *or wrong*" by "disclaimer of those [Third Party] assets alone." Dkt. 96 at 1. Plaintiff, Defendants and Third Parties then appeared at the January 26, 2024 hearing and presented argument. SPA-12. Citibank had the opportunity to present live witnesses but chose not to do so. A-605 (January 26, 2024 Hearing Transcript ("Hr'g Tr.") at 5:8-17).

On February 2, 2024, treating the Rule 69 motion as a summary judgment motion, the District Court granted Citibank's motion for a writ of execution as to the New York Property owned by One57, and motion for a turnover order as to certain assets of One57 and Aralpa Miami. SPA-14 ("Order," Rochon, J.). Based on a

flawed New York choice of law analysis, the District Court applied New York law to the reverse veil piercing claims against both Aralpa Miami and One57, and held that Citibank was not required to reverse pierce the corporate veil of owner Aralpa Capital. SPA-40.

The District Court also held Citibank had satisfied its high burden to show domination, and adopted Citibank's framing by holding Citibank had shown a "fraud or wrong" based in part on Lebois "disclaiming" control over the Third Party Assets. SPA-36–37. This is despite Citibank's express acknowledgment in the 2022 Term Sheet that Lebois was not the owner of the Third Party Assets—evidence the Court failed to cite. SPA-36.

## IX. Defendants Appealed and the District Court Entered a Stay Pending Appeal.

On February 15, 2024, Appellants timely appealed the District Court Order and simultaneously sought a stay pending appeal from the District Court. A-617 (Notice of Appeal), Dkt. 106. The next day, on February 16, 2024, the District Court granted Appellants' motion for a stay of the Order pending appeal, "recogniz[ing] that there are significant and complicated legal issues at play here." A-623, Dkt. 110.

## SUMMARY OF ARGUMENT

The District Court erred as a matter of law in at least three ways by granting the writ of execution and turnover order as to the Third Party Assets of Aralpa Miami and One57.

First, the District Court ignored binding precedent requiring that, under New York's choice of law principles, the law of the place of incorporation applies to the issue whether to disregard the corporate form and reverse pierce the corporate veil. Because Aralpa Miami is a Georgia Limited Liability Company, the District Court erred by not applying Georgia law's prohibition against reverse veil piercing to the claim against Aralpa Miami.

Second, the District Court erred by not requiring Citibank to reverse pierce the corporate veil of each layer in the ownership structure of Aralpa Miami and One57. The weight of authority requires piercing at every layer, and breaking with this authority poses due process concerns because the affected entity could be deprived of its interests without a day in court. The District Court erred by not requiring and not even considering whether to pierce the corporate veil of Aralpa Miami and One57 owner Aralpa Capital, a Mexican corporation. The District Court further erred in displacing Aralpa Capital and holding Lebois is the equitable owner of Aralpa Miami and One57, posing comity concerns and a potential conflict with Mexican law. This error is fatal to Citibank's claims against both Aralpa Miami and

14

One57.

Third, the District Court erred in its application of the factors considered to reverse pierce the corporate veil, which requires a plaintiff seeking to pierce to demonstrate that the defendant has completely dominated the corporation and abused the corporate form to injure plaintiff. With respect to both prongs, the District Court emphasized the wrong factors and drew improper inferences in favor of Citibank, rather than Appellants, as required in considering summary relief of the type here. These errors are also fatal to Citibank's claims against both Aralpa Miami and One57.

Accordingly, the Court should reverse the Order.

## STANDARDS OF REVIEW

This Court "review[s] a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the party opposing summary judgment and drawing all reasonable inferences in [their] favor." *M.A. ex rel. H.R. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 35 (2d Cir. 2022). "Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Jones v. Goodrich Pump & Engine Control Sys., Inc.,* 86 F.4th 1010, 1017 (2d Cir. 2023) (citing *M.A.*, 53 F.4th at 35–36).

Further, this Court reviews "a district court's grant of a writ of execution for

15

abuse of discretion." *Levinson,* 44 F.4th at 95 (citing *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 467 (2d Cir. 2018)). In considering whether there has been an abuse of discretion, the Court reviews *de novo* the District Court's rulings of law. *See Commodity Futures Trading Comm'n v. Walsh*, 712 F.3d 735, 750 (2d Cir. 2013); *see also Levinson*, 44 F.4th at 95 ("A district court 'abuses its discretion when its decision rests on an error of law'").

The Court also reviews *de novo* the District Court's application of New York's choice of law principles. *See Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir. 1998). The Court reviews *de novo* the District Court's legal conclusions that Citibank was not required to reverse pierce the corporate veil of each entity in the corporate structure, that Lebois was the equitable owner of the Third Parties, and that Citibank had satisfied its high burden to establish the required factors to reverse pierce the corporate veil and enforce the Judgment against the Third Parties. *See Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997). The Court reviews *de novo* mixed questions of law and fact. *See Atateks Foreign Trade, Ltd. v. Priv. Label Sourcing, LLC,* 402 F. App'x 623, 625 (2d Cir. 2010) (stating in deciding alter ego claim: "We review the district court's legal conclusions *de novo*, but we defer to its underlying factual findings unless they are clearly erroneous . . .. We review *de novo* mixed questions of law and fact.").

16

## ARGUMENT

I. **The District Court Erred as a Matter of Law by Applying New York Law Rather than the Law of the State of Formation to Reverse Pierce the Corporate Veil of Georgia Limited Liability Company Aralpa Miami.**

The District Court erred as a matter of law by ignoring governing authority requiring application of the law of the state of incorporation (or state of formation in the case of a limited liability company) to the issue whether to disregard the corporate form and reverse pierce the corporate veil. Aralpa Miami is a Georgia limited liability company and the District Court erred by not applying Georgia law, which prohibits reverse veil piercing.[2]

A federal court adjudicating a state law claim, as here, applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 263 (2d Cir. 1984). Under New York's choice of law rules, the first step is "to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Licci ex.*

---

[2] The sole basis for exercising personal jurisdiction over Aralpa Miami was as an alter ego of Lebois. SPA-16 (citing *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). Aralpa Miami specially appeared below and specially appears here solely to contest the Court's exercise of personal jurisdiction over it, and without waiving such defense. Aralpa Miami asked the District Court that its appearance for this special purpose be construed and decided as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). A reversal of the alter ego holding would mean there is no personal jurisdiction over Aralpa Miami, which joins in the remainder of the arguments solely to the extent that the Court determines it does have personal jurisdiction over Aralpa Miami.

17

*rel. Licci v. Lebanese Canadian Bank*, 672 F.3d 155, 157 (2d Cir. 2012). The parties do not dispute that a conflict exists here because New York law permits reverse veil piercing while Georgia law does not.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). It is "perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." *Morris v. N.Y. State Dep't of Tax'n & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993). However, "the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when . . . the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Bestfoods,* 524 U.S. at 62. *See also NetJets Aviation, Inc. v. LHC Commc'n, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (noting standard is similar with respect to piercing of limited liability company). The doctrine of piercing the corporate veil is reserved for "the rare exception." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

New York law also "recognizes 'reverse' piercing, which . . . seeks to hold a corporation accountable for actions of its shareholder." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). Other courts have noted that this remedy "is much less common and much more controversial." *Church Joint*

18

*Venture, LP v. Blasingame*, 947 F.3d 925, 931 (6th Cir. 2020); *see also In re Nilhan Fin., LLC,* 652 B.R. 381, 389 (Bankr. M.D. Fla. 2023) (reverse veil piercing remedy "more extreme" than traditional veil piercing).

The remedy is so controversial that, as the District Court recognized, Georgia law expressly prohibits reverse veil piercing.  SPA-18; *see Acree v. McMahan*, 585 S.E.2d 873, 875 (Ga. 2003) (rejecting reverse veil piercing); *Cmty. & S. Bank v. Lovell*, 807 S.E.2d 444, 446 (Ga. 2017) ("It is settled in Georgia that a creditor generally cannot reach the assets of a corporation to satisfy the debt of a shareholder . . ."); *Corrugated Replacements, Inc. v. Johnson*, 797 S.E.2d 238, 243 (Ga. Ct. App. 2017) (observing Georgia Supreme Court "firmly closed" the door to any exceptions to its rejection of reverse veil piercing); *In re Knight,* 574 B.R. 800, 814 (Bankr. N.D. Ga. 2017) (acknowledging Georgia Supreme Court's ban on reverse veil piercing); *In re Webster*, 629 B.R. 654, 667–68 (Bankr. N.D. Ga. 2021) ("Georgia recognizes no such claim [for reverse veil piercing] nor any exception to the bar against it"); *In re Nilhan Fin., LLC,* 652 B.R. at 389 ("settled case law in Georgia plainly holds that reverse veil-piercing is not a remedy that is recognized under the laws of Georgia.").

A. <u>The District Court Erred by Ignoring the Rule that the Law of the State of Incorporation Determines When the Corporate Form Will Be Disregarded for Reverse Veil Piercing</u>.

Having identified a conflict, the District Court erred in applying New York's choice of law principles.

The governing authority for the issue presented here—whether to disregard the corporate form and reverse pierce the corporate veil of an alleged alter ego—is stated in *Fletcher*: "under New York choice of law principles, 'the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (holding Delaware law determines whether the corporate veil of a Delaware corporation can be pierced).

This Court has cited *Fletcher* and restated the rule repeatedly, including as recently as last year. *See Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014) (citing *Fletcher* and stating "generally 'the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders'" while applying California law to veil piercing claim against California corporation); *Kosachuk v. Selective Advisors Grp., LLC*, 827 Fed. App'x 58, 61 n.3 (2d Cir. 2020) (citing *Fletcher* and stating "New York courts look to the law of the state of incorporation when engaging in an alter ego analysis."); *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 275 n.11

20

(2d Cir. 2023) (citing *Fletcher* and stating in diversity cases "the law of the state of incorporation determines when the corporate form will be disregarded").

In a case pre-dating *Fletcher*, the Court described the principle as an "interest analysis" requiring that: "the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993) (citing *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 248 N.E.2d 576, 582 (N.Y. 1969)). As explained in *Kalb*, because the purpose of corporation laws is to "insulate shareholders from legal liability," the state of incorporation will have the "greater interest" in whether to disregard the corporate form and strip away this insulation:

> The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders: "Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away." *Soviet Pan Am Travel Effort v. Travel Committee, Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y.1991) (applying New York choice of law principles). *See also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 307 (1971) ("The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation ... and to its creditors for corporate debts.").

*Kalb*, 8 F.3d at 132–33.

The District Court did not even address *Fletcher*, and committed reversible error by not following *Fletcher* and *Kalb* and not applying Georgia's prohibition on

reverse veil piercing to Aralpa Miami. *See Acree*, 585 S.E.2d at 875.

Rather than applying *Fletcher*, the District Court erroneously concluded that a flexible interest analysis is required. To reach this conclusion, the District Court misapplied two strains of authorities.

First, the District Court relied on inapposite cases applying a flexible interest analysis to issues concerning the internal affairs of a corporation such as standing and process for shareholder actions against directors, not claims to pierce the corporate veil. *See, e.g., Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68–69 (2d Cir. 2017) (holding in shareholder action that internal affairs doctrine is a "species of interest analysis" that "provides the place of incorporation generally has the greatest interest in having its law apply" to "the relationship between shareholders and directors"); *Greenspun v. Lindley*, 330 N.E.2d 79, 81 (N.Y. 1976) (shareholder action); *Norlin Corp.*, 744 F.2d at 263 (shareholder action); *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 179 (S.D.N.Y. 2014) (shareholder action), *aff'd*, 611 F. App'x 34 (2d Cir. 2015). But the District Court erred in relying on those authorities to conclude that such a flexible interest analysis applies to the issue presented here—whether to disregard the corporate form. SPA-19.[3]

---

[3] The District Court states that Appellants stated New York adheres to the internal affairs doctrine. SPA-19. Appellants made this reference in their brief while citing

Second, the District Court relied on federal district court and New York intermediate court cases that, in the circumstances presented, applied some flexibility to the issue whether to disregard the corporate form. But the District Court was required to follow this Court's binding authority, not decisions from non-binding courts, and in any event the cases do not cite New York Court of Appeals authority applying flexibility when the issue is alter ego liability. SPA-21; *see, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 583 B.R. 829, 845–46 (Bankr. S.D.N.Y. 2018) (citing *Greenspun* and *Norlin Corp.*, both of which concerned shareholder actions); *Serio v. Ardra Ins. Co.,* 761 N.Y.S.2d 1, 1–2 (1st Dep't 2003) (citing *Intercontinental Planning, Ltd.*, which decided choice of law in relation to contract cause of action). Thus there is no ambiguity, and no basis to predict that the New York Court of Appeals would adopt this flexible approach on the issue of disregarding the corporate form. *Cf. Donohue v. Hochul*, 32 F.4th 200, 207 (2d Cir. 2022) (noting that, absent law from a state's highest court, a federal court "has to predict how the state court would resolve an ambiguity in state law").

---

*Fletcher* and *Kalb*, asserting as they do here that those cases apply the law of the state of incorporation. Dkt. 92 at 9. The Court states that Appellants acknowledged at the Order to Show Cause hearing that the state of incorporation is not always dispositive under New York choice of law rules in veil piercing matters. SPA-19. In that excerpt, when pressed counsel said "there is some flexibility," but "I don't think there is much," and "it would be my position that you need some pretty extraordinary facts to disregard choice of law." A-610 (Hr'g Tr. at 40:18, 23-25).

23

Moreover, the case the District Court relies on and highlights as "instructive" is anything but—in that case *neither party* asserted that the law of the place of incorporation applied. SPA-27; *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 720 & 724 (S.D.N.Y. 2017) (noting parties agreed that the state of incorporation law should not apply where alleged alter ego was organized as an exempted limited partnership under Bermuda law and was managed entirely by defendant out of defendant's Texas office). The District Court erred in veering from *Fletcher* and following these inapposite authorities.

B. Even if an Interest Analysis Were Required, the District Court Erred in Concluding that Citibank Has Rebutted the Presumption that the Law of the State of Incorporation Governs.

Even if a flexible interest analysis were performed, the analysis begins with "a presumption that the law of the state of incorporation will govern the question of alter ego liability." *In re Bernard L. Madoff Inv. Sec. LLC*, 583 B.R. at 845; *Cortland St. Recovery Corp. v. Bonderman*, 187 N.Y.S.3d 602, 605 (1st Dep't 2023) ("Even though the judgment debtors were incorporated in Luxembourg, creating a presumption that Luxembourg law governs, the circumstances here militate in favor of applying New York law."). To rebut that presumption, relevant factors include the domiciles of the parties, place of performance and place of contracting. *See Bank of New York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014). Rather than weigh the interests, the District Court cited a hodgepodge of contacts, committing several

errors of law in concluding that Citibank has rebutted the presumption. SPA-25.

First, absent from the District Court's analysis is any discussion of the interests that "relate to the purpose of the particular law in conflict"—Georgia's state corporation law. *Kalb,* 8 F.3d at 132. That interest is particularly potent here because Georgia prohibits the reverse veil piercing remedy available in other jurisdictions due to concerns about exactly what Citibank is attempting here: "The reverse-pierce theory . . . bypasses normal judgment-collection procedures, whereby judgment creditors attach the judgment debtor's shares in the corporation and not the corporation's assets." *Acree*, 585 S.E.2d at 874. The Supreme Court of Georgia also noted the potential impact on doing business in Georgia: "[c]orporate creditors are likely to insist on being compensated for the increased risk of default posed by outside reverse-piercing claims, *which will reduce the effectiveness of the corporate form as a means of raising credit*." *Id*. at 874–75 (emphasis added). Georgia's interest in protecting the corporate form is particularly robust; by contrast, New York's corporation laws are not implicated.

Second, the District Court erred by not acknowledging Georgia as Aralpa Miami's principal place of business. SPA-23. Aralpa Miami is organized under Georgia law and governed by Georgia law; its principal place of business is designated as Georgia and it has a registered office and agent in Georgia. A-290 (Aralpa Miami Operating Agreement §§ 2.3-2.4). Although the company has since

sold the Miami Property, even if it were considered inactive, its principal place of business is where it last did business, Georgia. *See Circle Indus. USA v. Parke Constr. Grp., Inc.*, 183 F.3d 105, 108 (2d Cir. 1999) (holding joint venture that "did business only in Georgia, last operated an office in Georgia, and hired lawyers in Georgia to collect its remaining accounts receivable" was for diversity purposes a citizen of Georgia).

The District Court instead relied on the declaration of a Citibank employee stating Aralpa Miami does not have an office. SPA-23 (citing declaration of Bruno Plotnicki ¶ 17). The District Court erred in weighing the declaration against the Operating Agreement and should have viewed the competing evidence (to the extent the Citibank declaration is reliable at all) in favor of Aralpa Miami. *See Weyant v. Okst*, 101 F.3d 845, 854–55 (2d Cir. 1996) ("in ruling on a motion for summary judgment, the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.").

Third, the District Court erred in relying on the Note and Guaranty between Citibank and Defendants Aralpa Holdings and Lebois, which is governed by New York law. SPA-24. But the Note and Guaranty are not, as the District Court states, at the "heart of the dispute." SPA-24. They are the basis for the claim giving rise

to the Judgment, but they have nothing to do with Aralpa Miami, which is not a party to the case below. They are, thus, "irrelevant" to an interest analysis for purposes of whether to disregard the corporate form as to Aralpa Miami. *See Kalb*, 8 F.3d at 132 (holding debentures giving rise to the substantive claim were "irrelevant" to the choice of law analysis regarding which law to apply to the alter ego claim). If any agreement is at the "heart of this dispute" it is Aralpa Miami's Operating Agreement, which establishes Aralpa Miami was formed under Georgia law and is subject to Georgia law. A-290, A-298 (Aralpa Miami Operating Agreement §§ 2.1, 14.1).

Finally, the District Court erroneously relied on Citibank's own actions to support the interest analysis. The District Court credited Citibank's decision to send Aralpa Miami Citibank account statements from Citibank's New York office. SPA-24. But a judgment creditor's actions should not factor into whether a third party is the alter ego of the judgment debtor. The cases the District Court cited in support did not rely on such a unilateral act of the creditor. *See, e.g., In re Bernard L. Madoff*, 582 B.R. at 847 (citing withdrawal of funds from accounts located in New York by alleged alter ego, not creditor).

Reliance on the creditor's unilateral acts is particularly troubling, as it would subject every corporation to the law of any state from which a bank chooses to send statements. This would undermine decisions where to incorporate for legitimate business purposes and protections including, of course, for those myriad

27

corporations that choose to incorporate in Delaware.

Upholding the decision and allowing a creditor to manipulate the choice of law analysis in that way would upend this Court's precedent and circumvent the "primary purpose" of state corporation law to "insulate shareholders from liability." *Kalb*, 8 F.3d at 132. The District Court erred in not applying Georgia's prohibition on reverse veil piercing to Aralpa Miami, requiring reversal.[4]

## II. The District Court Erred as a Matter of Law by Not Requiring Citibank to Reverse Pierce the Corporate Veil of Each Entity in the Corporate Structure to Reach the Assets of Aralpa Miami and One57.

The District Court erred as a matter of law by not requiring Citibank to reverse pierce the corporate veil of Aralpa Capital, which Citibank has acknowledged is the owner of Aralpa Miami and One57. The Order as to both Third Parties should be reversed on these grounds.

### A. The District Court Erred by Not Requiring Veil Piercing at Every Layer of Ownership.

The weight of authority within and outside this Circuit requires a plaintiff to pierce the corporate veil at every layer of ownership. *See, e.g., Judson Atkinson Candies v. Latini-Hohberger Dhiamantec*, 529 F.3d 371, 381 (7th Cir. 2008) (holding judgment debtor did not show that intermediary entity was an alter ego of

---

[4] Appellants argued in the alternative below that, if Georgia law were not applied, Florida law should apply. Dkt. 92 at 14. Appellants do not press that alternative argument on appeal.

the parent and thus could not pierce the parent's veil to reach the parent's shareholders); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) ("[I]n order for the activities of Compressors, Comptec, and Robbins to be attributed to ACAB, Appellants must make a prima facie case that ACAB controls ACNA, itself a holding company, and controls Compressors, Comptec, and Robbins."); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 151 n.9 (S.D.N.Y. 2012) (applying Delaware law and holding "it is necessary to pierce the corporate veil at each level or layer of ownership") (citing *In re Heritage Org.*, 413 B.R. 438, 514 (Bankr. N.D. Tex. 2009) (applying Delaware law and holding the veil piercing test "must be applied to, and satisfied at, each level or layer of ownership applicable within the multi-faceted entity structure.")); *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 404 (S.D.N.Y. 2009) (holding plaintiffs would have to show "two-tiered domination so to speak" and pierce the subsidiary to get to the shareholders of the parent); *Brenner v. Philips, Appel & Walden, Inc.*, No. 93 Civ. 7838 (JFK), 1997 WL 33471053, at *6 (S.D.N.Y. July 22, 1997) ("Plaintiffs must pierce several corporate layers to reach defendants . . .").

The authorities the District Court cites may have expressed uncertainty about whether there is a need to pierce each layer of ownership, but ultimately did not decide the issue and thus are not persuasive authority. SPA-39 (citing *In re Servicom, LLC*, Nos. 18–31722 et al., 2021 WL 825155, at *21 (Bankr. D. Conn.

29

Feb. 24, 2021) (declining to reach issue due to the posture); *In re BH S & B Holdings LLC*, 420 B.R. 112, 135 (Bankr. S.D.N.Y. 2009) (same), *aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011).

Allowing a judgment creditor to pierce the corporate veil without doing so at each corporate layer poses due process concerns, as under Supreme Court precedent, judgment may not be entered on the basis of alter ego liability where an affected entity "has never had its day in court on the question of whether it and its subsidiary should be considered the same entity for purposes of [the] litigation." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 111 (1969). On the other hand, courts have held, "[w]hen the alleged 'alter ego' is a party to the action where the 'alter ego' status is litigated, due process will be satisfied." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 611 F. Supp. 281, 284 (S.D.N.Y. 1985), *aff'd in part, rev'd in part,* 933 F.3d 131 (2d Cir.1991); *see also Imagineering, Inc. v. Lukingbeal*, 94 Civ. 2589 (RLC), 1997 WL 363591, at *5 n.11 (S.D.N.Y. June 30, 1997) ("a judgment cannot be enforced against an alleged alter ego who has not had an opportunity to litigate whether or not such a relationship did exist.") (citing *Zenith Radio Corp.*, 395 U.S. at 122).

Due process concerns are animated here because Citibank did not name Aralpa Capital in its enforcement proceeding, and offered no evidence or argument upon which to reverse pierce its corporate veil. Thus, upholding the decision as to

30

Aralpa Miami and One57 means that the interests of Aralpa Capital will be affected because, as the sole shareholder, it is entitled to the residual value of the alleged alter egos, and the decision deprived it of that right without ever having had its day in court.

B. <u>The District Court Erred in Considering Equitable Ownership to Avoid Piercing Each Layer in the Corporate Structure.</u>

The District Court further erred as a matter of law by holding that Citibank was not required to pierce the veil of Aralpa Capital because Lebois should be deemed the "equitable owner" of the Third Parties. SPA-35, SPA-40. The District Court misconstrued the principle of equitable ownership, which this Court has explained allows a traditional veil piercing claim against an individual who is not a shareholder, but "who exercises sufficient control over the corporation." *Freeman,* 119 F.3d at 1051. To begin, equitable ownership is not a substitute for veil piercing. *See, e.g., Highland CDO Opportunity Master Fund, L.P.,* 270 F. Supp. 3d at 733 (noting that equitable ownership "is not an alternative to veil piercing").

Moreover, *Freeman* and the cases cited therein involved traditional veil piercing claims seeking to hold an individual liable for a company's actions or debt. *Freeman*, 119 F.3d at 1047. In that circumstance, the individual's exertion of control over the corporation may be to the detriment of creditors just as much as the actual owner. *Cf. Lally v. Catskill Airways Inc.*, 603 N.Y.S.2d 619, 621 (3d Dep't 1993) (finding individual could be liable for the company's debt if he had been acting in

31

his own interest and managing financial resources for his own benefit to the detriment of creditors). This reasoning largely has not been applied to reverse veil piercing where a creditor is seeking to reach third party assets owned by a separate entity. The cases on which Citibank relies do not permit a court to simply ignore the parent and displace its interests in the alter ego analysis without due process, especially where, as here, that parent is a non-U.S. corporation.

The District Court further erred as a matter of law by accepting Citibank's argument that Lebois in fact is the equitable owner of One57 and Aralpa Miami. SPA-35, SPA-40. This conclusion is directly undermined by Citibank's own Term Sheet acknowledging that Aralpa Miami and One57 own the Third Party Assets and are, in turn, "owned 100% by Aralpa Capital." A-593 (2022 Term Sheet). This evidence should have been construed in the light most favorable to Appellants to reject Citibank's argument, but the District Court failed even to cite to it, and brushed this acknowledgment aside as "immaterial." SPA-36; *see M.A.,* 53 F.4th at 35 (on summary judgment evidence should be construed in the light most favorable to nonmovant).

Compounding the error, the District Court *again* ignored the law of the place of incorporation in considering the issue of equitable ownership. The District Court erred in failing to consider Mexican law in its analysis, even though its ruling displaced Mexican corporation Aralpa Capital as the owner of Aralpa Miami and

One57. *See, e.g., In re Tyson*, 433 B.R. 68, 94 (S.D.N.Y. 2010) (considering whether English law recognizes the doctrine of equitable ownership in deciding whether to lift the corporate veil of a Gibraltar law corporation). This error is especially extreme given the potential for conflict with foreign law and comity considerations, if Mexican law would not recognize Lebois as the owner of the Third Parties. *Cf. Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 138–40 (2d Cir. 2014) (holding "comity analysis . . . is . . . appropriate before ordering a nonparty foreign bank to freeze assets abroad in apparent contravention of foreign law to which it is subject").

The District Court erred by not requiring Citibank to reverse pierce the corporate veil of Aralpa Capital, requiring reversal as to both Aralpa Miami and One57.

### III. The District Court Erred in Concluding that Citibank Had Satisfied Its High Burden to Establish the Required Factors to Reverse Pierce the Corporate Veil and Enforce the Judgment Against Aralpa Miami and One57.

Assuming *arguendo* that New York law applies to the reverse veil piercing claim against Aralpa Miami and One57, and that Lebois is treated as the "owner" of each entity, the District Court erred as a matter of law in concluding that Citibank had borne its "heavy burden" to obtain that relief. *See TNS Holdings, Inc. v. MKI Sec. Corp.*, 703 N.E.2d 749, 751 (N.Y. 1998). In reverse veil piercing claims, as in conventional veil piercing claims, the plaintiff must show that "(1) the owner exercised complete domination of the corporation in respect to the transaction

33

attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Am. Fuel Corp.*, 122 F.3d at 134; *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203 (N.Y. 2018).

This Court has cautioned that this analysis "can be difficult, particularly in the case of small privately held corporations where the trappings of sophisticated corporate life are rarely present." *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 (2d Cir. 1989) (reversing lower court ruling because Court was "unable to isolate any evidence which warrants, in our view, the district court's decision to pierce the corporate veil"). The District Court erred as a matter of law in this "difficult" analysis of the small privately held Third Parties, including by drawing improper inferences from the undisputed documentary evidence, crediting Citibank's untested declaration, and ignoring Appellants' evidence. This Court reviews *de novo* this mixed question of law and fact and the District Court's failure to view the evidence in the light most favorable to Appellants. *See Atateks Foreign Trade, Ltd.,* 402 F. App'x at 625.

A. <u>The District Court Erred as a Matter of Law in Holding that Lebois Exercised Complete Domination over the Third Parties</u>.

The District Court committed several errors in considering the various factors under the "complete domination" prong. *See Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).

First, the Court erred in concluding that Lebois "used" the Third Party Assets

34

as his own by listing them on Personal Financial Statements provided to Citibank. SPA-33, SPA-35. This is not borne out in the record. The most recent Personal Financial Statements from 2022 list assets of "Lebois and Family." A-573, A-575 (Personal Financial Statements dated March 2022 and June 2022). And the best evidence of Citibank's understanding whether Lebois "used" these as his own is Citibank's own Term Sheet, which describes the New York Property as "owned by One[57] 36B LLC (owned 100% by Aralpa Capital) ('One57')" and the Miami Property as "owned by Aralpa Miami Investments (owned 100% by Aralpa Capital)." A-596 (2022 Term Sheet). The District Court held what Citibank knew was "immaterial" and failed to cite the highly probative 2022 Term Sheet. SPA-36. But in viewing the evidence in the light most favorable to Appellants, the District Court should not only have considered the Term Sheet, but also should have found that Citibank understood Lebois did not individually own the Third Party Assets. *See Weyant,* 101 F.3d at 854–55.

As to other factors, the District Court erred in concluding that Aralpa Miami and One57 were undercapitalized to support a finding of domination. SPA-31. As a matter of law, undercapitalization alone is insufficient to pierce the corporate veil. *See 138-77 Queens Blvd LLC v. Silver*, 682 F. Supp. 3d 271, 281 (E.D.N.Y. 2023).

Courts outside this Circuit have assessed capitalization "in light of the nature and risk of [the] business." *Flores v. Bodden*, 488 F. App'x 770, 777 (5th Cir. 2012)

(applying Texas law); *see also Automotriz De Golfo De Cal. S.A. v. Resnick*, 47 Cal. 2d 792, 797 (Cal. 1957) (assessing whether an entity lacks adequate capital as "compared with the business to be done") (quoting Ballantine on Corporations (rev. ed. 1946) pp. 302–03). The District Court correctly found that One57 "does no business other than own the New York Property" and that Aralpa Miami previously owned the Miami Property. SPA-31. The court also correctly found that One57 and Aralpa Miami have used their Citibank bank accounts to make mortgage payments to Citibank. SPA-31.

Yet the District Court misapplied this factor and failed to assess the adequacy of the capitalization in light of the nature of that business. Properly evaluated, a real estate holding company that uses its capital to pay the mortgage should not be considered "undercapitalized." By contrast, the case the District Court cites involved a corporation with an inability to pay its *own* judgment. SPA-31 (citing *Rotella v. Dener*, 723 N.Y.S.2d 801, 802 (4th Dep't 2001)).

Nor is Lebois' funding of the Third Parties improper. *See 138-77 Queens Blvd LLC*, 682 F. Supp. 3d at 282. The District Court equally erred in attaching any significance to Aralpa Miami and One57 using the same address as Lebois. SPA-31; *see Am. Fuel Corp.*, 122 F.3d at 134-35 (holding evidence of domination inadequate as a matter of law despite alleged alter egos having no independent office space and using the owner's home address).

36

Finally, the District Court erred by finding that Lebois exercises authority over the entities and Appellants had "submitted no evidence" to the contrary. SPA-34. That is simply wrong. Appellants submitted the declaration of Almudena Ocejo, which states that she is Manager of Aralpa Miami and One57 and "handle[s] all operational matters and decisions for those companies." A-588 (Ocejo Decl. ¶ 6). The District Court ignored this evidence, relying instead on the Operating Agreements that listed Lebois as one of the Managers, and noting Appellants had not stated that Lebois "relinquished" his authority. SPA-34.

The District Court itself acknowledged it was required to view the evidence in the light most favorable to the nonmoving party, Appellants. SPA-13 (citing *Jones*, 86 F.4th at 1017). *See also Weyant,* 101 F.3d at 854–55. Nor is that Court to consider the record "in piecemeal fashion." *See Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) ("the district court may not properly consider the record in piecemeal fashion . . . ; rather, it must "review all of the evidence in the record"). The District Court failed to follow this standard. Properly viewed in the light most favorable to Appellants, the Ocejo Declaration establishes that Ocejo, and not Lebois, handles all operational matters and decisions for the Third Parties, thus it was error to hold that the "undisputed facts" show Lebois exercised the requisite domination over Aralpa Miami and One57. SPA-31.

The District Court erred in its ultimate conclusion that Lebois exercises

complete domination over Aralpa Miami and One57. Because this veil piercing requisite is not satisfied, the Order should be reversed.

B. The District Court Erred as a Matter of Law in Holding that the Third Parties Were Used to Commit a Fraud or Wrong.

Despite initially alleging that Lebois used his domination over Aralpa Miami and One57 "to defraud" Citibank, Dkt. 77 at 14, in its pre-hearing Reply, Citibank abandoned its sole reliance on fraud, and alleged instead that Lebois used the Third Parties to commit a "fraud *or wrong*" by "disclaim[ing]" the Third Party Assets he previously represented as his own. Dkt. 96 at 1. The District Court erred by finding that Citibank had established that Lebois committed a "wrong" in abusing the corporate form.

Where fraud is not alleged, the "wrong" required to pierce the corporate veil must be some sort of abuse of the corporate form: "The party seeking to pierce the corporate veil must establish that the owners, through their domination, *abused the privilege of doing business in the corporate form* to perpetrate a wrong or injustice against that party such that a court in equity will intervene." *Morris*, 623 N.E.2d at 1161 (emphasis added). Abuse is typically shown where a party attempts to render an entity "judgment proof" by diverting or dissipating assets. *See Great Atl. & Pac. Tea Co. v. 380 Yorktown Food Corp.*, No. 16-cv-5250 (NSR), 2020 WL 4432065, at *16 (S.D.N.Y. 2020) ("Conduct that is simply 'motivated by a desire to render the subsidiary [or entity] judgment proof' constitutes a fraud or wrong for purposes of

38

this analysis."); *Feitshans v. Kahn*, No. 06 Civ. 2125 (SAS), 2007 WL 2438411, at *5 (S.D.N.Y. Aug. 24, 2007) ("For example, courts have found that the diversion of a dominated entity's funds into the dominating party's personal bank accounts, while on notice of a potential judgment against the entity, constitutes dissipation of assets that could otherwise have been used towards satisfying plaintiff's judgment.").

Citibank made no allegations and submitted no evidence of diversion or dissipation. Thus, the District Court could not have concluded (as it did) based on the record before it that Lebois was engaged in "judgment-proofing." SPA-37.

Moreover, Aralpa Miami and One57 both were formed before the Judgment and engaged in their stated business purpose. This is not abuse of the corporate form. For example, in *Morris,* the New York Court of Appeals rejected a veil piercing claim attempting to reach the president of a company formed to own and lease boats. The court held the requisite abuse was not present where "[t]here is no contention that there was anything improper in the formation of [the alleged alter ego] for the stated purpose of purchasing, owning and leasing boats," the alleged alter ego "carried on its stated business," and there was "no suggestion that any obligations of the corporation remained unpaid." 623 N.E.2d at 1162. *See also TNS Holdings, Inc.,* 703 N.E.2d at 751 ("An inference of abuse does not arise from this record where a corporation was formed for legal purposes or is engaged in legitimate business.").

The reasoning applies with equal force to the Third Parties. There was nothing improper in the formation of the Third Parties before Citibank obtained the Judgment or even filed suit—and Citibank does not allege that there was. Both Third Parties have carried on their stated business of purchasing and holding property, and making mortgage payments to Citibank. Thus, there is no showing of abuse nor any basis for even an inference of abuse. *See Morris,* 623 N.E.2d at 1162; *TNS Holdings,* 703 N.E.2d at 751; *see also Guptill Holding Corp v. New York*, 307 N.Y.S.2d 970, 973 (3d Dep't 1970), *aff'd*, 292 N.E.2d 782 (N.Y. 1972) (finding no showing of fraud or illegality because alleged alter ego was formed well before the condemnation at issue, negating any inference that it was formed as a shell to avoid tax liability for the subsequent condemnation award).

There also is no showing that Lebois represented and then disclaimed the Third Party Assets as his own, or that Citibank was injured because it relied on any such earlier representations to extend and amend the Note. SPA-36. The Personal Financial Statements that Lebois provided cannot be said to list the Third Party Assets "as his assets," SPA-36, where some of the statements expressly state that they list assets of "Lebois and Family." A-573, A-575 (Personal Financial Statements dated March 2022 and June 2022).

The District Court improperly relied on the declaration of Citibank employee Bruno Plotnicki to conclude that Citibank understood these assets to be those of

40

Lebois, and provided the loan because Citibank could seek recourse against those assets. SPA-36. But this declaration was not "unopposed evidence," as the District Court wrongly held. SPA-36. Rather, Citibank's Term Sheet asking for a security interest over the Third Party Assets "owned" by Aralpa Miami and One57, in turn "100% owned by" Aralpa Capital, is opposing and unassailable evidence that Citibank understood the Third Party Assets were not Lebois' assets, and that Citibank did not have "recourse" to them. A-596 (2022 Term Sheet).

Thus, it is Citibank that has done an about-face in these proceedings and disclaimed its earlier (and correct) understanding. Yet the District Court failed to view the evidence in the light most favorable to Appellants, considering what Citibank knew "immaterial" and failing to cite the 2022 Term Sheet at all. SPA-36. *See Weyant*, 101 F.3d at 854–55 ("in ruling on a motion for summary judgment, the district court is not to weigh the evidence"); *Gottlieb v. County of Orange*, 84 F.3d 511, 519 (2d Cir. 1996) ("We will reverse the granting of summary judgment if there is any evidence in the record from which a reasonable inference on an issue of material fact could be drawn in favor of the nonmoving party.").

Moreover, Mr. Plotnicki's declaration is self-serving and patently unreliable. Citibank chose not to call Mr. Plotnicki as a witness at the Order to Show Cause hearing to meet its burden, thus Appellants had no opportunity to cross-examine him and test what he described as Citibank's understanding and motivations. A-605

41

(Hr'g Tr. at 5:8-17).[5]

A declaration from another Citibank witness who was not called to testify is equally telling in what it leaves out. The declaration from Mario Meza states that, during discussions, Lebois "spoke in terms of assets that belonged to Mr. Lebois rather than distant interests." A-586 (Meza Decl. ¶ 25). But what this witness does not say is that Lebois told Citibank that he owned the Third Party Assets, thus the District Court erred in finding, based on the record, that he made any such representation. SPA-35–36.

Nor did Citibank offer any evidence whatsoever that it would have acted differently had these assets not been listed on the Personal Financial Statements. Citibank addresses this point only in its Reply brief below, stating that "clearly Citibank would not have kept the loan outstanding had it known Lebois was misrepresenting his ultimate ownership." Dkt. 96 at 9 n.9. But this is attorney argument, not evidence, and it is not "clear." What is clear (and revealing) is that Citibank's witnesses did not say this, nor did Citibank mention these Third Party Assets in its Complaint alleging that Lebois failed to maintain a sufficient net worth. A-18–19 (Complaint ¶ 36-41).

---

[5] Although Appellants did not object to the submission of the declarations as evidence, that by no means was an admission that the declarations were competent evidence, especially because they are filled with vague statements not supported by any other evidence.

Indeed, the Third Party Assets are valued together at approximately $13 million, a tiny fraction of the over $600 million in assets on the Personal Financial Statements. A-564–75 (Personal Financial Statements). This negligible value undermines any inference that Citibank extended and amended the Note in reliance on the Third Party Assets.

The District Court erred in holding that Citibank satisfied the "fraud or wrong" prong or otherwise satisfied its burden to reverse pierce the corporate veil, requiring reversal.

## **CONCLUSION**

For the foregoing reasons, Appellants respectfully request that this Court reverse the Order dated February 2, 2024, of the District Court (Rochon, J.), and enter an order denying Citibank's motion for a writ of execution and turnover order or, in the alternative, vacate the Order and remand to the District Court with instructions on how to undertake the reverse veil piercing analysis.

Dated: New York, New York
      May 28, 2024

Respectfully submitted,

KOBRE & KIM LLP

By: */s/ Daniel J. Saval*

Daniel J. Saval
Lara Levinson
800 Third Avenue
New York, NY 10022
(212) 488-1200
Daniel.Saval@kobrekim.com
Lara.Levinson@kobrekim.com

*Attorneys for Defendants-Appellants Aralpa Holdings Limited Partnership and Rodrigo Lebois Mateos and Appellants One57 36B, LLC and Aralpa Miami Investments, LLC*

44

## <u>CERTIFICATE OF COMPLIANCE</u>

This response complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f), this response contains 10458 words, as determined by the word-processing system on Microsoft Word for Microsoft 365, version 2403. This response also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this response has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, version 2403 in size 14, Times New Roman font.

Dated: May 28, 2024
   New York, New York

*/s/ Daniel J. Saval*
Daniel J. Saval

*Attorney for Appellants*

45

SPECIAL APPENDIX

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

                                                              **Page**

Order and Opinion, dated February 2, 2024 .............. SPA-1

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITIBANK, N.A.,

                              Plaintiff,

              -against-

ARALPA HOLDINGS LIMITED PARTNERSHIP
and RODRIGO LEBOIS MATEOS,

                              Defendants.

Case No. 1:22-cv-08842 (JLR)

**ORDER AND OPINION**

---

JENNIFER L. ROCHON, United States District Judge:

Citibank, N.A. ("Citibank" or "Plaintiff") has obtained a money judgment against Rodrigo Lebois Mateos ("Lebois") and Aralpa Holdings Limited Partnership ("Aralpa Holdings" and, together, "Defendants"). ECF No. 55. Proceeding under Federal Rule of Civil Procedure ("Rule") 69 and several sections of the New York Civil Practice Law and Rules ("CPLR"), Plaintiff now moves for the issuance of a writ of execution and turnover order to enforce that judgment against two nonparties, One57 36B, LLC ("One57") and Aralpa Miami Investments LLC ("Aralpa Miami"), and an order of attachment as to One57 and Aralpa Miami. ECF Nos. 76 (the "OSC"), 77 (the "Opening Brief" or "Br."), 96 (the "Reply Brief" or "Reply"). Lebois and Aralpa Holdings oppose this motion, as do the two nonparties (together with Defendants, "Nonmovants"). ECF No. 92 ("Opp."). Citibank also seeks an order compelling Lebois to respond to an information subpoena served on him. OSC at 2.

Based on the parties' written submissions and oral presentations, and for the following reasons, the Court: (1) grants Plaintiff's motion for the issuance of a writ of execution and turnover order as to the assets of One57; (2) grants Plaintiff's motion for a turnover order as to the assets of Aralpa Miami; (3) denies as moot Plaintiff's motion for attachment; (4) denies

1

the motion to compel without prejudice; and (5) unseals most (but not all) of the documents presently sealed.

## BACKGROUND

### I.    Factual Background

The following facts are undisputed.

#### A.    Parties and Non-Parties

Citibank is a national banking association organized under the laws of the United States.  ECF No. 97 ("Second Plotnicki Decl.") ¶ 3.  Its main office, as listed on its federal charter, is in South Dakota.  *Id.* ¶ 4.  Its principal place of business is in New York.  *Id.* ¶ 5. Bruno Plotnicki is a senior credit officer at Citi Private Bank, an affiliate of Citibank.  ECF No. 78 (the "First Plotnicki Declaration" or "First Plotnicki Decl.") ¶ 1.  Plotnicki is "responsible for managing a portfolio of loans," and he has "personal knowledge with respect to Citibank's lending relationship with Aralpa Holdings and Lebois, as well as Citibank's relationship with entities affiliated with Lebois, including One57 and Aralpa Miami."  *Id.* ¶ 3. Mario Meza is a director and senior credit officer at Citibank.  ECF No. 79 (the "Meza Declaration") ¶ 1.  During most of the relevant time period, Meza was based in Mexico City and served as the Mexico Risk Head for Citibank.  *Id.* ¶ 3.[1]

---

[1] In their brief, Nonmovants "reserve the right to contest Meza's Declaration and exhibits as proper evidence."  Opp. at 7 n.2 ("He admits that he was not involved in all of the discussions, thus his description is double hearsay, and many of the attached emails are in Spanish with no translation, certified or otherwise."); *see Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." (citation omitted)); *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009) ("[F]or summary judgment purposes, 'a supporting or opposing affidavit must be made on personal knowledge.'" (original brackets omitted) (quoting Fed. R. Civ. P. 56(e)(1)).  The Court agrees that some (but not all) of the Meza Declaration is inadmissible.  Where the Court cites the Meza Declaration, it thereby finds that portion to be admissible for the purpose for which it is cited.

SPA-3

Lebois is a citizen and domiciliary of Mexico.  ECF No. 1 ("Compl.") ¶ 7; ECF No. 21 ("Ans.") ¶ 7.  His daughter is Almudena Lebois Ocejo ("Ocejo").  ECF No. 93 ("Ocejo Decl.") ¶ 1.  Aralpa Holdings is a Canadian limited partnership with its principal place of business in Canada.  Compl. ¶ 6; Ans. ¶ 6.  Lebois is the sole limited partner of Aralpa Holdings.  *Id.*  The general partner of Aralpa Holdings is Yucon Mining LLC ("Yucon"), a Delaware limited-liability company ("LLC") whose only member is Lebois.  *Id.*

One57 is a New York LLC formed on September 7, 2016.  First Plotnicki Decl. ¶ 4.  One57 does not have an office and does not do any business other than owning an apartment in a building at 157 West 57th Street in Manhattan (the "New York Property").  *Id.* ¶ 7.  An operating agreement for One57 dated August 24, 2017, states:

> The business and affairs of the Company shall be managed by between Rodrigo Lebois and Almudena Lebois each as Manager.  Each Manager is individually authorized to execute any and all documents on behalf of the Company necessary or appropriate in connection with the acquisition, financing, operation, management or development of the Property or any other property of the Company.

ECF No. 78-1 (the "One57 Operating Agreement") § 6.  An organization agreement and resolution for One57, dated September 11, 2019, identifies Lebois as president and Ocejo as secretary.  First Plotnicki Decl. ¶ 5; ECF No. 78-2 (the "One57 Resolution") at 2-3.  Under the

---

As for the First Plotnicki Declaration, Nonmovants say only, in passing, that it is "self-serving," Opp. at 18, and "untested," *id.* at 21.  Such conclusory assertions, without more, do not suffice to call into doubt the First Plotnicki Declaration's factual averments or otherwise create disputes of material fact.  *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (a party opposing summary judgment "cannot defeat the motion by relying . . . on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible"); *Cestaro v. Prohaska*, --- F. Supp. 3d ----, 2023 WL 4425737, at *2 (S.D.N.Y. July 7, 2023) ("[C]ourts may not disregard non-conclusory statements in an affidavit just because they are 'self-serving.'" (citation omitted)).

SPA-4

One57 Resolution, Lebois and Ocejo each has full authority to transact all business on One57's behalf.  First Plotnicki Decl. ¶ 5; One57 Resolution at 3.

Βut One57's sole member is Aralpa Capital SA de CV ("Aralpa Capital").  First Plotnicki Decl. ¶ 6.  Aralpa Capital is a Mexican corporation.  ECF No. 78-3 at 2.  An organization agreement and resolution initially dated August 19, 2020, with an addition signed by Lebois on November 16, 2020, lists Lebois as president of Aralpa Capital and Ocejo as an "authorized signer," with each having full authority to conduct business on Aralpa Capital's behalf.  *Id.* at 2, 7 (capitalization omitted).

Aralpa Miami is a Georgia LLC formed on January 24, 2018.  First Plotnicki Decl. ¶ 14.  Aralpa Miami's sole member is Aralpa Capital.  *Id.* ¶ 15.  Aralpa Miami does not have an office and does not do any business. *Id.* ¶ 17.  An operating agreement for Aralpa Miami, dated April 23, 2018, states that Lebois and Ocejo are the "initial managers" of Aralpa Miami. ECF No. 78-9 (the "Aralpa Miami Operating Agreement") § 1.  The agreement further provides:

> The business and affairs of the Company shall be managed by its Manager.  A non-member Manager may be appointed by the Members.  Except for situations in which the approval of the Members is expressly required by this Agreement or by non-waivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business.  Notwithstanding any provision of the [Limited Liability Companies Act of the State of Georgia], subject to the provisions of Article 5 hereof, at any time when there is more than one Manager, each Manager shall have one vote with respect to, and the affirmative vote, approval, or consent of a majority of the Managers shall be required to decide, any matter arising in connection with the business and affairs of the Company.  Any one Manager may take any action permitted to be taken by the Managers and authorized by a majority of the Managers.

*Id.* § 5.1; *see id.* § 1 ("At any time there is more than one Manager of the Company, all references to the Manager in the singular shall be deemed to refer to all Managers."). An organization agreement and resolution, dated April 24, 2018, states that Lebois is the director of Aralpa Miami, and that Ocejo is an "authorized signer." ECF No. 78-10 (the "Aralpa Miami Resolution") at 2-3 (capitalization omitted). Under the Aralpa Miami Resolution, Lebois and Ocejo each has full authority to transact all business on Aralpa Miami's behalf. *Id.* at 3.

In a declaration executed on January 11, 2024, Ocejo states that "Lebois holds no position with Aralpa Capital," and that "Gerardo Tietszch and I are the Managing Directors of Aralpa Capital." Ocejo Decl. ¶ 5. She also states: "As Manager of [Aralpa Miami] and [One57], I handle all operational matters and decisions for those companies." *Id.* ¶ 6. Lebois has not submitted a declaration.

### B. The New York Property Owned by One57

In January 2018, One57 obtained a $5.22 million mortgage from Plaintiff for the New York Property. First Plotnicki Decl. ¶ 8. Lebois signed the mortgage agreement for the New York Property. *Id.*; ECF No. 78-4 at 22. As a condition for providing the mortgage, Plaintiff required, among other things, that Lebois fully and personally guaranty the mortgage, which he did. First Plotnicki Decl. ¶ 9; ECF No. 78-5 at 3; Opp. at 6; *see Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("Facts admitted by a party are judicial admissions that bind that party throughout the litigation." (brackets, quotation marks, and citation omitted)).

The mortgage documents for One57 identified two addresses in Mexico City as associated with One57: one on a street named after the Castillo de Chapultepec (the "Chapultepec Address"), and the other on a street named after Tomáš Masaryk, the first president of Czechoslovakia (the "Masaryk Address"). First Plotnicki Decl. ¶ 10; *see Fletcher*

*v. Standard Fire Ins. Co.*, 80 F. Supp. 3d 386, 394 (E.D.N.Y. 2015) (affiants may "testify to the contents of records they have reviewed in their official capacities" (citation omitted)). Lebois has listed one or both of these addresses as personal addresses throughout his course of dealings with Citibank, including in the guaranty that Lebois signed relating to the Aralpa Holdings credit facility (discussed below). First Plotnicki Decl. ¶ 10. Notably, Aralpa Miami also uses the Masaryk Address as its own address. *Id.* ¶ 17.

One57 has a bank account with Citibank (the "One57 Citibank Account"). *Id.* ¶ 11; *see also* Jan. 26, 2024 Order to Show Cause Hr'g Tr. ("Hr'g Tr.") at 70:19-21 (One57's only assets are the New York Property and the One57 Citibank Account). A review of account statements between November 2021 and October 2023 discloses that the One57 Citibank Account carried a minimal balance during the time period and was used only to pay the mortgage on the New York Property. First Plotnicki Decl. ¶ 11. The One57 Citibank Account was replenished primarily via wire transfers from Lebois's personal accounts at other financial institutions. *Id.* ¶ 13. As of December 8, 2023, the One57 Citibank Account contained $54.48. *Id.* ¶ 12.

### C. The Miami Property Formerly Owned by Aralpa Miami

In April 2018, Aralpa Miami purchased a property on Fisher Island, Florida, for $3.5 million (the "Miami Property"). *Id.* ¶ 18. In July 2018, Aralpa Miami obtained a $2.45 million mortgage from Plaintiff for the Miami Property. *Id.* ¶ 19; ECF No. 78-11 at 2-4. Lebois fully and personally guarantied the mortgage for the Miami Property. First Plotnicki Decl. ¶ 20; Opp. at 5. Ocejo testifies that the Miami Property "was an investment property and whenever Lebois or his family stayed there, rent was paid to Aralpa Miami." Ocejo Decl. ¶ 4.

6

Aralpa Miami also has a bank account with Citibank (the "Aralpa Miami Citibank Account"). First Plotnicki Decl. ¶ 23. A review of account statements between November 2021 and October 2023 reveals that the Aralpa Miami Citibank Account carried a minimal balance during the time period and was used only to pay the mortgage on the Miami Property, as well as some fees to a property-management company. *Id.* The Aralpa Miami Citibank Account was replenished primarily via wire transfers from Lebois's personal accounts at other financial institutions. *Id.* ¶ 25. As of November 30, 2023, the Aralpa Miami Citibank Account contained $6,128.99. *Id.* ¶ 24. The Aralpa Miami Citibank Account statements are issued by a Citibank branch in New York. *See generally* ECF No. 78-13.

On February 21, 2023, Aralpa Miami sold the Miami Property for $8,925,000. First Plotnicki Decl. ¶ 21. Aralpa Miami paid off the balance on the Citibank mortgage, which was $2,450,000 at the time, leaving it with $6,475,000 in net proceeds from the sale. *Id.* Aralpa Miami did not deposit any of this money in the Aralpa Miami Citibank Account. *Id.* ¶ 49. It is unknown to Plaintiff – and unclear from the record – what happened to the net proceeds from the sale of the Miami Property. *Id.* ¶ 22.

Aralpa Miami also has a bank account with a UBS Financial Services, Inc. branch in Florida (the "Aralpa Miami UBS Account"). *Id.*; Opp. at 14. As of October 31, 2023, the Aralpa Miami UBS Account contained $2,015,486.19 in cash and money-market funds. First Plotnicki Decl. ¶ 22; *see* ECF No. 78-12 at 6-7.[2]

---

[2] At times, Plaintiff mentions a second Aralpa Miami account at UBS (ending in xxxx768) in its request for relief. *See, e.g.*, OSC at 2. But the only evidence provided to this Court are account documents and declarations regarding the Aralpa Miami account at UBS ending in xxxx767. *See* First Plotnicki Decl. ¶ 22; ECF No. 78-12. Moreover, Plaintiff referred only to one Aralpa Miami-owned UBS account during the OSC hearing and in its reply brief. Therefore, the Court assumes that Citibank is only seeking relief with respect to the Aralpa Miami UBS Account ending in xxxx767.

### D.  The Note and the Guaranty

On June 16, 2017, Citibank agreed to provide Aralpa Holdings with a $20 million credit facility (essentially, a line of credit).  First Plotnicki Decl. ¶ 26; Compl. ¶ 13 n.2; Ans. at 4; *see* ECF No. 78-16 (the "Note").  To ensure its ability to be repaid on the Note, Citibank required Lebois to personally guaranty the repayment of any funds borrowed by Aralpa Holdings.  First Plotnicki Decl. ¶ 26; *see* ECF No. 78-15 (the "Guaranty").  Under the terms of the Guaranty, Lebois represented that he had a net worth of "not less than $200 million," and agreed to provide personal financial statements to Citibank on a semi-annual basis.  First Plotnicki Decl. ¶ 27.  The Guaranty also provided that Lebois irrevocably and unconditionally agreed to submit to the non-exclusive jurisdiction of the New York courts; that New York law applied to the Guaranty; and that Lebois would designate a process agent in New York.  Guaranty §§ 24, 25.  The Note contained materially identical language.  Note §§ 3(b)(v), 26-27.

Plotnicki testifies that "Citibank relied on the Guaranty, including the representations and covenants therein, when it agreed to provide the credit facility to Aralpa Holdings.  Had Lebois not provided a Guaranty, represented he had a net worth of at least $200 million and agreed to provide periodic financial statements, Citibank would not have agreed to provide the credit facility to Aralpa Holdings."  First Plotnicki Decl. ¶ 28.

The Guaranty was amended and restated on September 30, 2019, April 12, 2021, and November 30, 2021.  *Id.* ¶ 29.  Each time the Guaranty was amended, Lebois agreed to "[m]aintain at all times (and to be tested at least annually) a [n]et [w]orth of not less than $400,000,000" and to provide Citibank with periodic personal financial statements.  *Id.*

The Note was amended and restated on July 27, 2018, September 30, 2019, April 12, 2021, and November 30, 2021.  *Id.* ¶ 30.  Among other things, these amendments extended

the maturity date on the Note and adjusted the amount of the facility to between $20 million and $50 million. *Id.* The final amendment, dated November 30, 2021, extended the maturity date of the Note to September 30, 2023, and set the amount of the facility at $35 million. *Id.* The amended Note also required Aralpa Holdings to cause Lebois to maintain a net worth of at least $400 million and provide periodic personal financial statements to Citibank. *Id.*

Plotnicki testifies that "Citibank agreed to amend the Note and extend the maturity date for repayment of the funds borrowed by Aralpa Holdings because Lebois guarantied repayment and because of the covenants in the Guaranty and the Note that required Lebois to maintain a net worth of at least $400 million and to provide periodic personal financial statements to Citibank." *Id.* ¶ 31. He further testifies that "Citibank also agreed to amend the Note because Lebois had been providing personal financial statements in which he repeatedly represented his net worth to be in excess of $400 million." *Id.* ¶ 32.

As required under the terms of the Note and the Guaranty, Lebois provided Citibank with personal financial statements on an annual and, later, semi-annual basis. *Id.* ¶ 33.[3] These personal financial statements listed Lebois's assets, liabilities, cash flow, and total net worth. *Id.* In each of the financial statements he provided, Lebois represented that he owned substantial assets and that his net worth was well in excess of $400 million. *Id.* ¶ 34. At their reported peak, Lebois's reported total assets were $810,144,741.02, and his total net worth was $763,454,741.02. *Id.* ¶ 38. As of June 30, 2022, Lebois reported total assets of $631,747,635.91 and a total net worth of $589,077,635.91. *Id.* ¶ 40.

---

[3] Two of the financial statements, dated March 2022 and June 2022, are labeled on the top as the assets of "Rodrigo Lebois Mateos and Family." ECF Nos. 78-23, 78-24. As with all of the other personal financial statements, however, they were submitted to Citibank in response to the requirement for Lebois to submit his personal financial statements. *See* Hr'g Tr. at 18:12-21.

SPA-10

Each of the personal financial statements submitted by Lebois from March 31, 2020, to June 30, 2022, listed specific assets owned. *Id.* ¶ 41. Each statement reported that Lebois owned tens of millions of dollars' worth of personal property, including art, boats, and jewelry. *See, e.g.*, ECF No. 78-19 at 2; ECF No. 78-20 at 2; ECF No. 78-21 at 2. Every statement also included, under the heading "Personal Real Estate," an asset labeled "NY, NY," and another asset labeled "Miami, FL (Fisher Island)." First Plotnicki Decl. ¶ 41. According to Plotnicki (and as Nonmovants do not dispute), "Lebois represented and Citibank understood that the asset described as 'NY, NY' was the New York Property and the asset described as 'Miami, FL (Fisher Island)' was the Miami Property." *Id.* Plotnicki also testifies that "Citibank understood that the assets included on the personal financial statement were ultimately owned by Lebois and it agreed to amend the Note and extend the maturity date of the credit facility on multiple occasions, as well as to provide Aralpa Holdings with waivers of default on the Note after March 2022, based on Lebois' representations and its understanding that Lebois ultimately owned these assets and they could be used to repay the loan if Aralpa Holdings did not repay it." *Id.* ¶ 42.

## II. Procedural History

On October 17, 2022, Plaintiff sued Defendants for breach of the Note and the Guaranty. Compl. Defendants answered on December 9, 2022. Ans.

On August 28, 2023, counsel for Lebois sent an email regarding settlement to counsel for Plaintiff. First Plotnicki Decl. ¶ 43.[4] The email stated, in relevant part: "On collateral,

_____

[4] Plaintiff argues that this email is admissible under Federal Rule of Evidence 408 "because it is being offered in connection with Citibank's veil piercing claim against One57 and Aralpa Miami to show Lebois'[s] control over One57 and other assets, not to prove the validity or amount of the underlying claim against Defendants in which the statement was made or for impeachment." Br. at 17 n.6; *see Trebor Sportswear Co. v. Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) ("Evidence of an offer to compromise, though otherwise barred by Rule

10

Mr. Lebois has offered the New York apartment, held by a non-loan party, that Citibank would not be able to look to as recourse under the loan." ECF No. 78-25 at 2. The email added that "Mr. Lebois previously offered artwork and jewelry and would like to understand why these assets would not be acceptable to Citibank. Mr. Lebois is also willing to explore alternatives for selling and/or monetizing these assets to pay down the loan (e.g., through obtaining financing from a third party lender based on the art/jewelry and using proceeds to paydown the Citi loan)." *Id.* Evidently, Plaintiff did not accept these offers.

On September 14, 2023, the Court granted Plaintiff's motion for judgment on the pleadings. *See Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842 (JLR), 2023 WL 5971014, at *1 (S.D.N.Y. Sept. 14, 2023). On September 15, 2023, the Court entered judgment in Plaintiff's favor of "thirty-five million dollars ($35,000,000.00), plus interest on the principal in the amount of $3,578,670.43 at the contractual default rate of interest from the date of the default (August 11, 2022) through the entry of this judgment, plus post-judgment interest at the federal statutory rate set forth in 28 U.S.C. § 1961, and, if and when the Court orders, an amount of attorneys' fees to be determined." ECF No. 55.

In support of its efforts to collect on its judgment, Plaintiff served an information subpoena and restraining notice on Lebois on October 24, 2023. First Plotnicki Decl. ¶ 44. On November 16, 2023, Lebois submitted a sworn response to the information subpoena. *Id.* ¶ 45. In it, Lebois stated that he had an interest in assets collectively valued at approximately $30 million, $17.8 million of which consisted of shares of Unifin Financiera, S.A.B. de C.V.

---

408, can fall outside the Rule if it is offered for 'another purpose,' *i.e.*, for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle."). Nonmovants do not to object to the email's admission on that basis; indeed, they also rely on statements in the email and even read unredacted portions of the email into the record during the hearing. *See, e.g.*, Opp. at 7 & n.3; Hr'g Tr. at 68:22-69:22. The Court therefore considers the email.

("Unifin") – a far cry from the hundreds of millions of dollars in assets that he previously represented to Citibank in earlier financial statements. *Id.* ¶ 46.

On December 14, 2023, Plaintiff moved *ex parte* for the Court to order Nonmovants to show cause why the Court should not (1) issue a writ of execution and turnover order to enforce the judgment against One57 and Aralpa Miami, (2) attach the assets of One57 and Aralpa Miami, and (3) compel Lebois to respond more fully to the information subpoenaes regarding his assets. Br.; First Plotnicki Decl.; Meza Decl.; OSC; ECF No. 80 (attorney declaration). Plaintiff also sought a temporary restraining order (a "TRO") to restrain the assets of One57 and Aralpa Miami during the pendency of the application. OSC at 2-3; Br. at 22-23. On December 15, 2023, the Court granted Plaintiff's motion for a TRO to maintain the status quo, "but only as to a limited portion of the request and only for a very short time." ECF No. 82 at 1. Specifically, the Court enjoined Aralpa Miami and anyone acting on its behalf from disposing of the Aralpa Miami UBS Account. *Id.* at 1-2.

The TRO went into effect on December 15, 2023, at 5:00 p.m., and was set to expire on December 19, 2023, at 11:59 p.m., "unless the Court order[ed] to extend it further upon good cause shown." *Id.* at 3. Plaintiff was ordered to serve the OSC on Defendants, and Defendants received an opportunity to respond to the TRO request. Defendants filed a letter in opposition to the TRO on December 18, 2023. ECF No. 84.

On December 19, 2023, the Court held a hearing during which counsel for Plaintiff and Defendants presented their arguments as to whether the Court should extend the TRO. At the end of the hearing, the Court informed the parties that the Court would extend the TRO for 14 days to maintain the status quo and that it would extend the restraint beyond the Aralpa Miami UBS Account to also include the Aralpa Miami Citibank Account, the One57 Citibank Account, and the New York Property. Later that same day, the Court issued a written order

12

extending the TRO (for longer than 14 days based on the consent of the parties), entering an OSC, and setting deadlines for further briefing and a hearing to be held on the OSC on January 26, 2024.  *See Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842 (JLR), 2023 WL 8810142, at *5 (S.D.N.Y. Dec. 19, 2023).

On January 12, 2024, Nonmovants submitted their opposition brief and supporting papers.  Opp.; Ocejo Decl.; ECF No. 94 (attorney declaration).  On January 19, 2024, Plaintiff submitted its reply brief and supporting papers.  Reply; Second Plotnicki Decl.; ECF No. 98 (attorney declaration).

The Court held the OSC hearing on January 26, 2024, where counsel for Plaintiff and Nonmovants presented their arguments as to whether the Court should grant Plaintiff's motion and whether the Court should maintain certain documents under seal.  Hr'g Tr.  At the end of the hearing, the parties consented to the extension of the TRO until February 2, 2024, at 11:59 p.m., to allow the Court to give the parties' arguments further consideration.  *Id.* at 74:11-19; ECF No. 100.

## LEGAL STANDARD

"A motion under Rule 69(a) is treated like a summary judgment motion."  *Major League Baseball Props., Inc. v. Corporación de Televisión y Microonda Rafa, S.A.*, No. 19-cv-08669 (MKV), 2023 WL 2625794, at *3 (S.D.N.Y. Mar. 24, 2023) (citation omitted).  Thus, on a Rule 69(a) motion, a "court may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims."  *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 473 (2d Cir. 2018) (quotation marks and citation omitted).  A court must view the evidence in the light most favorable to the nonmoving party, *Jones v. Goodrich Pump & Engine Control Sys., Inc.*, 86 F.4th 1010, 1017 (2d Cir. 2023), but the nonmovant "must do more than simply show that there is some

13

metaphysical doubt as to the material facts," *PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268, 275 (2d Cir. 2019) (citation omitted), and the "mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient," *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (brackets and citation omitted).

On matters of state law, the Court must follow the decisions of the state's highest court. *Johnson v. Fankell*, 520 U.S. 911, 916 (1997). If the state's highest court has not addressed an issue, this Court must predict how that court would do so. *Donohue v. Hochul*, 32 F.4th 200, 207 (2d Cir. 2022). "This Court is bound to apply [state] law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010); *accord Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021) ("Even when there is no decision by the New York Court of Appeals, we still must apply what we find to be New York law after giving proper regard to relevant rulings of other New York courts, because the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." (quotation marks and citations omitted)).

## DISCUSSION

### I.   Subject-Matter Jurisdiction

As a threshold matter, Nonmovants suggest that Plaintiff's efforts to pierce the corporate veils of One57 and Aralpa Miami "are not authorized under the Court's ancillary enforcement jurisdiction, thus requiring another basis for subject matter jurisdiction." Opp. at 11 n.5; *see Peacock v. Thomas*, 516 U.S. 349, 351 (1996) (federal courts do not "possess

ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment").

The Court has diversity jurisdiction over Plaintiff's veil-piercing claims against One57 and Aralpa Miami because the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(2) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state"); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (Section 1332 requires complete diversity between all adverse parties); *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam) (same).

Plaintiff is a citizen of South Dakota. *See* Second Plotnicki Decl. ¶ 4 (Citibank's main office is in South Dakota); *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 216 (2d Cir. 2016) (per curiam) ("[F]or purposes of subject matter jurisdiction, a national bank is a citizen only of the state in which its main office is located."). Lebois is a citizen and domiciliary of Mexico. Compl. ¶ 7; Ans. ¶ 7. Aralpa Holdings is a citizen of Mexico. Compl. ¶ 6 (Aralpa Holdings is a Canadian limited partnership whose sole limited partner is Lebois and whose general partner is Yucon; Yucon is a Delaware LLC whose only member is Lebois); Ans. ¶ 6 (admitting the relevant portions of Compl. ¶ 6); *see Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir. 2000) (Sotomayor, J.) ("for purposes of diversity jurisdiction, limited partnerships have the citizenship of each of its general and limited partners"); *Altruis Grp., LLC v. ProSight Speciality Mgmt. Co.*, No. 21-cv-10757, 2023 WL 5151122, at *2 (S.D.N.Y. Aug. 10, 2023) ("[T]he citizenship of an LLC has *nothing to do* with its state of formation or principal place of business; rather, the citizenship of an LLC consists of the imputed citizenship of each one of its members." (citation omitted)). One57 is a citizen of

Mexico.  First Plotnicki Decl. ¶¶ 4, 6 (One57 is a New York LLC whose sole member is

Aralpa Capital, a Mexican corporation).  Aralpa Miami is a citizen of Mexico.  *Id.* ¶¶ 14-15

(Aralpa Miami is a Georgia LLC whose sole member is Aralpa Capital).  Hence, Plaintiff and

Nonmovants are completely diverse.  Further, the amount in controversy plainly exceeds

$75,000.  The Court therefore has diversity jurisdiction.

## II.     Personal Jurisdiction

Aralpa Miami next argues that the Court cannot exercise personal jurisdiction over it.

*See* Opp. at 8-9.[5]  Plaintiff argues that the Court may exercise personal jurisdiction over

Aralpa Miami because Aralpa Miami "is Lebois'[s] alter ego."  Br. at 13 n.3; *see S. New Eng.*

*Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("It is . . . well established that

the exercise of personal jurisdiction over an alter ego corporation does not offend due

process."); *In re Stage Presence, Inc.*, 592 B.R. 292, 298 (Bankr. S.D.N.Y. 2018) ("The

federal courts have long held that under New York law, the concepts of alter ego liability and

veil-piercing liability are indistinguishable, do not lead to different results, and should be

treated as interchangeable." (quotation marks and citation omitted)), *aff'd*, No. 18-cv-10662

(JSR), 2019 WL 2004030 (S.D.N.Y. May 7, 2019); Hr'g Tr. at 71:24-72:1 (counsel for

Nonmovants acknowledging that if the Court holds that Lebois and Aralpa Miami are alter

egos, the Court has personal jurisdiction over Aralpa Miami).  The Court agrees with Plaintiff.

In evaluating whether Aralpa Miami is Lebois's alter ego, the Court must first

determine what law to apply.  "According to long-settled precedent, a federal court sitting in

diversity borrows the forum State's choice-of-law rule."  *Cassirer v. Thyssen-Bornemisza*

---

[5] One57 does not challenge the Court's exercise of personal jurisdiction over it or the
application of New York law to Plaintiff's effort to reverse-pierce the veil of One57.  *See*
Opp. at 9; Reply at 3 n.3; Hr'g Tr. at 8:18-19.

*Collection Found.*, 596 U.S. 107, 115 (2022). Thus, the Court applies New York's choice-of-law rules, under which "the first inquiry . . . is whether there is an actual conflict of laws on the issues presented." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). There is an actual conflict here because New York and Florida recognize reverse-veil-piercing claims but Georgia does not. The question is therefore whether New York, Florida, or Georgia law applies to Plaintiff's attempt to reverse-pierce the corporate veil of Aralpa Miami. As explained below, the Court holds that New York law applies.

### A. Veil-Piercing Principles

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quotation marks and citation omitted). "But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Id.* at 62; *see NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) ("emerging caselaw illustrates that situations that result in a piercing of the limited liability veil are similar to those that warrant piercing the corporate veil" (brackets, quotation marks, and citation omitted)).

Piercing the corporate veil allows a plaintiff, under appropriate circumstances, to hold a corporation's owner liable for actions taken by the corporation. *See, e.g., Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 202-05 (N.Y. 2018); *Brunswick Mfg. Co. v. Sizemore*, 359 S.E.2d 180, 181-82 (Ga. Ct. App. 1987); *XL Vision, LLC v. Holloway*, 856

So.2d 1063, 1066-67 (Fla. Dist. Ct. App. 2003).  Under New York law, the reverse is also

possible, and a plaintiff may (assuming the requisite conditions are met) "reverse-pierce" the

veil – that is, hold a corporation liable for actions taken by its owner.  *See Am. Fuel Corp. v.*

*Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997); *Moshell v. Alter*, 127 N.Y.S.3d 296,

296-97 (2d Dep't 2020); *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 297

(E.D.N.Y. 2014) (collecting cases); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev.*

*& Trade Servs., Inc.*, 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003).  The same is true under

Florida law.  *See In re Trujillo*, 626 B.R. 59, 71 (Bankr. S.D. Fla. 2019); *Sweeney, Cohen,*

*Stahl & Vaccaro v. Kane*, 773 N.Y.S.2d 420, 424 (2d Dep't 2004) (applying Florida law);

*Estudios, Proyectos e Inversiones de Centro Am., S.A. (EPICA) v. Swiss Bank Corp.*

*(Overseas) S.A.*, 507 So.2d 1119, 1120-21 (Fla. Dist. Ct. App. 1987) (per curiam).  In

contrast, Georgia does not permit reverse-veil-piercing claims.  *See Cmty. & S. Bank v. Lovell*,

807 S.E.2d 444, 446 (Ga. 2017); *Acree v. McMahan*, 585 S.E.2d 873, 875 (Ga. 2003); *In re*

*Webster*, 629 B.R. 654, 667-68 (Bankr. N.D. Ga. 2021).

> ### B.  New York Substantive Law Applies to Plaintiff's Attempt to Reverse-Pierce the Corporate Veil of Aralpa Miami

If a conflict exists, New York choice-of-law principles require a court to apply "the

law of the jurisdiction having the greatest interest in the litigation."  *Indosuez Int'l Fin. B.V. v.*

*Nat'l Rsrv. Bank*, 774 N.E.2d 696, 700 (N.Y. 2002) (citation omitted).  "Interest analysis is a

flexible approach intended to give controlling effect to the law of the jurisdiction which,

because of its relationship or contact with the occurrence or the parties, has the greatest

concern with the specific issue raised in the litigation."  *Licci ex rel. Licci v. Lebanese*

*Canadian Bank, SAL*, 672 F.3d 155, 157-58 (2d Cir. 2012) (per curiam) (quotation marks and

citation omitted); *accord In re Adoption of Doe*, 923 N.E.2d 1129, 1135 (N.Y. 2010).

Nonmovants argue in their brief that Georgia law governs Plaintiff's attempt to reverse-pierce the corporate veil of Aralpa Miami because "New York adheres to the internal affairs doctrine" and "Aralpa Miami is a limited liability company formed in Georgia."  Opp. at 9-10; *see Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.").  The Court disagrees.

As Nonmovants acknowledged at the OSC hearing, *see* Hr'g Tr. at 40:15-25, the state of incorporation is not always dispositive under New York choice-of-law rules in veil-piercing matters.  The New York Court of Appeals has "rejected 'any automatic application of the so-called 'internal affairs' choice-of-law rule.'"  *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 263 (2d Cir. 1984) (quoting *Greenspun v. Lindley*, 330 N.E.2d 79, 81 (N.Y. 1976)).  That is because "New York takes a much narrower view of the internal affairs doctrine than do some other jurisdictions.  In cases in other jurisdictions, there appears to be some tendency, where officers or directors of a corporation are involved, to make automatic reference to the state of incorporation's laws, without engaging in any weighing of interests.  In New York, however, such automatic reference is rejected."  *Tyco Int'l, Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 560 (S.D.N.Y. 2010) (ellipsis, quotation marks, and citation omitted).  Instead, under New York law, the state of incorporation "is applied only as one factor in an analysis where the law of the state with the greatest interest in the issue governs."  *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 179 (S.D.N.Y. 2014) (quotation marks and citation omitted), *aff'd*, 611 F. App'x 34 (2d Cir. 2015) (summary order).

To be sure, even under an interest-analysis approach, the state of incorporation usually weighs heavily in the choice-of-law analysis for veil-piercing claims.  Therefore, "[a]lthough New York courts reject a per se application of the internal affairs doctrine, they generally apply the law of the place of incorporation unless another state has an overriding interest in applying its own law and a defendant has little contact, apart from the fact of its incorporation, with the state of incorporation."  *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68-69 (2d Cir. 2017) (summary order) (quotation marks and citations omitted); *see, e.g.*, *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132-33 (2d Cir. 1993) (conducting an interest analysis and concluding that the law of the state of incorporation applied to alter ego claim); *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014) (summary order) ("New York choice of law rules provide that generally 'the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.'  Because CFI is a California corporation, California law governs this claim." (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)); *HSM Holdings, LLC v. Manu I.M. Mobile Ltd.*, No. 20-cv-00967 (LJL), 2021 WL 918556, at *23 (S.D.N.Y. Mar. 10, 2021) ("Plaintiff has failed to rebut this presumption through a showing that this is the rare case in which the state of incorporation has little meaningful connection to the parties involved."); *Hayden Cap. USA, LLC v. Northstar Agri Indus., LLC*, No. 11-cv-00594 (DAB), 2012 WL 1449257, at *6-7 (S.D.N.Y. Apr. 23, 2012) ("New York courts will disregard the state of incorporation only when the Defendant's contacts and the events at issue in the case substantially implicate New York. . . . This Court agrees with the PICO Defendants that Delaware, as the state of incorporation, has a greater interest in the successor liability claim than New York.  Although Plaintiff is correct that the PICO Defendants' contacts with Delaware are minimal, their contacts with New York are non-existent.").

20

Even though "New York law creates a presumption that the law of the state of incorporation will govern the question of alter ego liability," "a party can rebut the presumption by showing that the transaction at issue has a more significant relationship with another jurisdiction." *In re Bernard L. Madoff Inv. Sec. LLC*, 583 B.R. 829, 845 (Bankr. S.D.N.Y. 2018). Several New York courts have found more significant relationships with a jurisdiction other than the state of incorporation in alter ego cases. *See, e.g.*, *Aspire Music Grp., LLC v. Cash Money Records, Inc.*, No. 652029/17, 2018 WL 3241897, at *6 (N.Y. Sup. Ct. July 2, 2018) ("Under New York choice of law principles, generally the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders. However, New York courts will disregard the state of incorporation where the Defendant's contacts and the events at issue in the case substantially implicate New York. Here, Cash Money is alleged to be a Louisiana corporation. However, the Aspire/YME Agreement, which is at the heart of this action, was executed in New York and is governed by New York law by way of a New York choice-of-law provision. The Court thus finds that New York law is controlling." (brackets, quotation marks, and citations omitted)), *aff'd in relevant part*, 94 N.Y.S.3d 23, 24 (1st Dep't 2019) ("The motion court correctly applied New York law to plaintiff's claim that Universal is the alter ego of defendant Cash Money Records, Inc."); *Deutsche Bank AG v. Vik*, No. 161257/13, 2015 WL 458284, at *18 (N.Y. Sup. Ct. Jan. 30, 2015) ("SHI does not deny that, apart from being incorporated under [Turks and Caicos Islands] law, it has no ties to that jurisdiction and that it conducts business in New York and other places. SHI's complaint in its action states that the FX account was opened in New York. SHI's sole shareholder, Vik, is not located in [Turks and Caicos Islands]. Due to scant contacts between SHI and [Turks and Caicos Islands], and because the internal affairs of SHI are not implicated, the law of New York will be applied to the alter ego

21

and veil piercing claims."), *aff'd*, 40 N.Y.S.3d 23, 24 (1st Dep't 2016) ("The court . . .

correctly found that New York law applies to the alter ego causes of action."); *UBS Sec. LLC*

*v. Highland Cap. Mgmt., L.P.*, 924 N.Y.S.2d 312, 2011 WL 781481, at *3 (N.Y. Sup. Ct. Mar.

1, 2011) (unpublished table decision) ("When determining conflicts issues, the courts of this

state do not automatically apply the 'internal affairs' choice-of-law rule.  Instead, the courts

take into account whether the corporate wrongdoer had contacts with its place of

incorporation, and the nature of the contacts, and the location of the transactions of which the

plaintiff complains"; applying New York law instead of Cayman law because "[o]ther than

being incorporated in the Cayman Islands, [the corporation] has no obvious ties to that

jurisdiction" (citation omitted)), *aff'd in relevant part*, 940 N.Y.S.2d 74, 75 (1st Dep't 2012)

("The motion court correctly ruled that New York law governs plaintiff's veil-piercing

claim."); *Serio v. Ardra Ins. Co.*, 761 N.Y.S.2d 1, 1-2 (1st Dep't 2003) ("Under the facts

presented, the trial court properly concluded that New York law governed disposition of the

issue of whether the corporate veil of Ardra Insurance Company (Ardra), a reinsurance

company, should be pierced to hold the individual defendants liable for a corporate debt.

Although incorporated in Bermuda, Ardra's contacts with that jurisdiction were minimal.  It

was not authorized to sell insurance in Bermuda or to do business with Bermuda residents.  It

was controlled by defendant Richard DiLoreto from New York and all the transactions

complained of occurred in New York.").[6]

---

[6] *See Rosenberg v. Metlife, Inc.*, 453 F.3d 122, 125-26 (2d Cir. 2006) ("While we are not
strictly bound by the decisions of the Appellate Division, it is nevertheless a well-established
principle that the ruling of an intermediate appellate state court is a datum for ascertaining
state law which is not to be disregarded by a federal court unless it is convinced by other
persuasive data that the highest court of the state would decide otherwise" (brackets, quotation
marks, and citation omitted)).

In conducting the required interest analysis, several facts in this case are particularly salient. To begin with, Aralpa Miami's sole connection to Georgia is that Aralpa Miami is organized under Georgia law. First Plotnicki Decl. ¶ 14. Although Aralpa Miami's operating agreement identifies an address in Atlanta, Georgia as "[t]he principal place of business" and the location of its "[r]egistered [o]ffice and [r]egistered [a]gent," Aralpa Miami Operating Agreement §§ 2.3-2.4, there is no evidence in the record that Aralpa Miami has its "nerve center" in Georgia, conducts any business in Georgia, or even has an office, employees, or any other contacts with Georgia of any kind, *cf. Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) ("[For purposes of the diversity-jurisdiction statute,] the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. Lower federal courts have often metaphorically called that place the corporation's 'nerve center.'"); *see* First Plotnicki Decl. ¶ 17 (Aralpa Miami does not have an office or do any business). Several courts have persuasively refused to apply the law of incorporation in similar circumstances. *See, e.g.*, *In re Bernard L. Madoff*, 583 B.R. at 847 ("Panama and the BVI have no meaningful relationship to the fraudulent withdrawals. Their connection is limited to the fact that they are the jurisdictions where Magnify and Strand were incorporated."); *Deutsche Bank*, 2015 WL 458284, at *18 ("[The corporation] does not deny that, apart from being incorporated under [Turks and Caicos Islands] law, it has no ties to that jurisdiction and that it conducts business in New York and other places."); *UBS Sec.*, 2011 WL 781481, at *3 ("Other than being incorporated in the Cayman Islands, [the corporation] has no obvious ties to that jurisdiction."); *Serio*, 761 N.Y.S.2d at 1 ("Although incorporated in Bermuda, [the corporation's] contacts with that jurisdiction were minimal.").

Meanwhile, the contracts at the heart of this dispute – the Note and the Guaranty – were executed with an entity (Plaintiff) whose principal place of business is in New York, such that the injury caused by Defendants' breach was centered in New York, *see* Second Plotnick Decl. ¶ 5; both contracts contained New York choice-of-law and venue clauses, *see* Note §§ 26, 27(a)-(b); Guaranty §§ 24, 25(a)-(b); both contracts appointed a New York-based agent to receive service of process on behalf of Lebois, *see* Note §§ 3(b)(v), 27(c); Guaranty § 25(c); this Court's judgment which Plaintiff seeks to execute against the Nonmovants was entered in New York, *see* ECF No. 55; and the Aralpa Miami Citibank Account statements are sent from Citibank's New York office, *see* ECF No. 78-13; *In re Bernard L. Madoff*, 583 B.R. at 847 ("The dispute centers on the withdrawal of more than $150 million of customer funds from BLMIS accounts located in New York."); *Aspire*, 2018 WL 3241897, at *6 ("[T]he Aspire/YME Agreement, which is at the heart of this action, was executed in New York and is governed by New York law by way of a New York choice-of-law provision."); *UBS Sec.*, 2011 WL 781481, at *3 ("The contracts between SOHC and UBS at issue here were negotiated through counsel in New York and, by their terms, are governed by the law of New York. None of the tortious conduct and contractual breaches by SOHC alleged in the first amended complaint are alleged to have occurred in the Cayman Islands.").

This dispute also does not involve a matter of internal administration "which cannot practicably be governed by the local law of more than one state." Restatement (Second) of Conflict of Laws § 302 cmt. g (Am. L. Inst. 1971); *see id.* § 302 cmt. e (listing examples of such matters: "steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares . . . , the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, the declaration and payment of dividends and other

24

distributions, charter amendments, mergers, consolidations, and reorganizations, the reclassification of shares[,] and the purchase and redemption by the corporation of outstanding shares of its own stock"). Thus, under New York law, "[t]he determination of whether one corporation is another corporation's alter ego does not involve consideration of corporate internal affairs" in the relevant sense. *UBS Sec.*, 2011 WL 781481, at *3 ("[A]lter ego liability and the related doctrine of piercing the corporate veil involve the abuse of the corporate form to the detriment of third parties, and do not implicate the corporation's internal affairs. Inasmuch as, here, UBS seeks a declaration that Highland Financial is SOHC's alter ego for purposes of contracts and conduct between UBS and SOHC, New York law governs the issue." (citation omitted)); *accord A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 836 (E.D. Mo. 2018) ("This is not a case involving a fight among shareholders or over the election of corporate officers. Rather, the veil-piercing issue in this case relates to the way the various entities were operated in relation to one another and to Doe Run Peru. As the case does not involve any disputes about the internal affairs of the various defendants, Missouri law applies to the veil-piercing issues [instead of the law of the place of incorporation].").

Given these factual circumstances, the Court believes that "the state of incorporation has little meaningful connection to the parties involved," and Plaintiff has "rebut[ted] th[e] presumption" in favor of applying the substantive law of the state of incorporation. *HSM Holdings*, 2021 WL 918556, at *23. Apart from having been organized under the laws of Georgia, Aralpa Miami "has no obvious ties to that jurisdiction." *UBS Sec.*, 2011 WL 781481, at *3.

Nonmovants argue, in the alternative, that if Georgia law does not apply, Florida law should apply rather than New York law. Opp. at 14. Nonmovants have not clearly argued that Florida law conflicts with New York law for veil-piercing. *Compare id.* at 15 ("Florida

SPA-26

courts will only reverse veil pierce upon finding that (1) the corporation was dominated and controlled to such an extent that the corporation's existence was in fact nonexistent; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." (brackets, emphasis, quotation marks, and citation omitted)), *with id.* at 19 ("The standard [for piercing the corporate veil under New York law] requires the same essential elements of domination and fraud: (1) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." (quotation marks and citation omitted)).  "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Licci*, 672 F.3d at 157.

Even if New York and Florida law do conflict, the Court concludes that New York has greater interests in the resolution of this dispute than Florida.  By Nonmovants' admission, Florida's only connections to this dispute are a house that Aralpa Miami no longer owns and money in a Florida-based branch of UBS.  *See* Opp. at 14.  Meanwhile, as noted above, New York has substantial contacts with this dispute: Citibank, who suffered from the breach of the Note and the Guaranty, has its principal place of business in New York; the Note and the Guaranty contained New York choice-of-law and venue clauses; the Note and the Guaranty appointed a New York agent to receive service of process; the judgment upon which Plaintiff seeks to execute was entered in New York; and Aralpa Miami's Citibank Account statements are sent from New York.  Second Plotnick Decl. ¶ 5; Note §§ 3(b)(v), 26-27; Guaranty §§ 24-25; ECF Nos. 55, 78-13.  Of the two, New York plainly has "the greatest interest in the litigation." *Indosuez*, 774 N.E.2d at 700 (citation omitted).

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716 (S.D.N.Y. 2017), is instructive.  In that case, "[t]he parties agree[d] that even though CDO Fund [wa]s organized in Bermuda, Bermuda law should not apply because CDO Fund had no meaningful connections with that jurisdiction." *Id.* at 724.  The plaintiff argued for Texas law; the defendants argued for New York law. *Id.*  The court sided with the defendants. *Id.* at 725-26.  "Three of the four [defendants] ha[d] their principal places of business in New York, including Citibank, N.A., who was the counterparty to the credit default swap agreements giving rise to the counterclaims.  Accordingly, the relevant injury here occurred in New York." *Id.* at 725 (citation omitted).  Also, the relevant agreements were "governed by New York law," and "New York has a significant interest in ensuring that parties who contract under New York law cannot escape liability to a New York counterparty by abusing the corporate form." *Id.*  "Texas's interests, in contrast, [we]re significantly more limited." *Id.* at 726.  Indeed, "the only interest that Texas ha[d] in this litigation [wa]s regulating the conduct of a foreign company doing business within Texas when the conduct injures parties outside of Texas.  That d[id] not outweigh New York's significant interests in the litigation." *Id.* *Highland CDO*'s analysis is persuasive and on point, and the Court adopts it here.

In sum, New York law applies to Plaintiff's attempt to reverse-pierce the veil of Aralpa Miami.  Because (as explained below) Plaintiff successfully reverse-pierces the veil of Aralpa Miami, the Court has personal jurisdiction over Aralpa Miami.

### III.    Plaintiff May Reverse-Pierce the Veils of One57 and Aralpa Miami

The veil-piercing analyses for One57 and Aralpa Miami implicate substantially similar facts and the same tenets of New York substantive law.  Therefore, the Court will evaluate them simultaneously (although, of course, facts that solely pertain to One57 do not apply to Aralpa Miami, and vice versa).

27

"New York law disfavors disregard of the corporate form," *Cobalt Partners, L.P. v. GSC Cap. Corp.*, 944 N.Y.S.2d 30, 33 (1st Dep't 2012), not least because "[t]he essential purpose behind corporations and other fictive entities is to give them a separate legal existence from the natural persons who own them and from other legal entities," *Franklin St. Realty Corp. v. NYC Env't Control Bd.*, 145 N.E.3d 204, 206 (N.Y. 2019). Indeed, "it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." *Morris v. N.Y. State Dep't of Tax'n & Fin.*, 623 N.E.2d 1157, 1160 (N.Y. 1993). Nevertheless, a court may properly disregard the corporate form "whenever necessary to prevent fraud or to achieve equity." *Cortlandt*, 96 N.E.3d at 203 (quotation marks and citation omitted). "Properly understood, an attempt to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Id.* (ellipsis, quotation marks, and citation omitted).

"Generally, a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Id.* (citation omitted). The same requirements apply when seeking to reverse-pierce the corporate veil. *See, e.g.*, *Liberty Synergistics*, 50 F. Supp. 3d at 297; *JSC*, 295 F. Supp. 2d at 379. As the phrase "fraud *or* wrong" suggests, *Cortlandt*, 96 N.E.3d at 203 (citation omitted; emphasis added), "proof of fraud . . . is not essential" to piercing the corporate veil, *Julien J. Studley, Inc. v. Lefrak*, 401 N.E.2d 187, 188 (N.Y. 1979). "[T]he corporate veil will be pierced to achieve equity, even absent fraud, when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can

28

be called the other's alter ego." *Tabchouri v. Hard Eight Rest. Co.*, 194 N.Y.S.3d 505, 511 (2d Dep't 2023) (citation omitted).  Still, "in the absence of any wrongdoing or resulting inequity vis-a-vis the plaintiff," "evidence of domination" by itself "will not suffice."  *Id.*

The veil-piercing analysis often focuses on the relationship between a corporation and its shareholders, who are its legal owners.  But New York law does not confine veil-piercing or reverse-veil-piercing claims solely to claims against legal owners.  "New York courts have recognized for veil-piercing purposes the doctrine of equitable ownership, under which an individual who exercises sufficient control over the corporation may be deemed an 'equitable owner,' notwithstanding the fact that the individual is not a shareholder of the corporation." *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1051 (2d Cir. 1997); *see Berisha v. 4042 E. Tremont Café Corp.*, 199 N.Y.S.3d 38, 40 (1st Dep't 2023) ("Even if an individual is not a record owner of a corporation, he may nonetheless be found to be an equitable owner and alter ego thereof if he dominated and controlled it to such an extent that he may be considered its equitable owner." (brackets, quotation marks, and citation omitted)); *Buckley v. Abuzir*, 8 N.E.3d 1166, 1172-73 (Ill. App. Ct. 2014) (collecting cases from New York courts, which "uniformly require only equitable, rather than actual, ownership"); *JSC*, 295 F. Supp. 2d at 379 (relying on equitable-ownership theory in denying motion to dismiss reverse-veil-piercing claims).  To be clear, "the theory [of equitable ownership] is not an alternative to veil piercing, but rather a recognition that veil piercing can apply to someone who is not a legal owner of a corporation if he exercises sufficient control and uses that control to commit a fraud or wrong."  *Highland CDO*, 270 F. Supp. 3d at 733.

There are "a variety of factors to consider in determining whether an individual exercises complete domination over a corporation."  *Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 439 (S.D.N.Y. 2018).  The relevant factors include

"(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address[es,] and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm[']s length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) ("*Passalacqua*"); *accord N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014); *Peery United Cap. Corp.*, 924 N.Y.S.2d 470, 473 (2d Dep't 2011). These factors are "not exhaustive," *Kasper Glob. Coll. & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 577 (S.D.N.Y. 2013), "no one factor is dispositive," *A&M Glob. Mgmt. Corp. v. Northtown Urology Assocs., P.C.*, 983 N.Y.S.2d 368, 374 (4th Dep't 2014) (brackets and citation omitted), and "there is no set rule as to how many of the alter ego factors must be present in order to pierce the corporate veil," *Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, 632 F. Supp. 3d 562, 570 (S.D.N.Y. 2022) (brackets and citation omitted); *accord Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, 724 F. Supp. 2d 308, 319 (E.D.N.Y. 2010) ("Domination is established not by [any] bright-line test, but by examination of the way a corporation functions – whether 'the owners use the corporation as a mere device to further their personal rather than the corporate business.'" (quoting *Morris*, 623 N.E.2d at 1161)). "The decision whether to pierce the

corporate veil in a given instance depends on the particular facts and circumstances." *F&R Goldfish Corp. v. Furleiter*, 178 N.Y.S.3d 87, 90 (2d Dep't 2022) (citation omitted).

Although a party seeking to pierce the corporate veil "bear[s] a heavy burden," *TNS Holdings, Inc. v. MKI Sec. Corp.*, 703 N.E.2d 749, 751 (N.Y. 1998), Plaintiff has met its burden here. To begin with, the undisputed facts show that Lebois has exercised domination over One57 and Aralpa Miami such that each has become "a mere instrumentality" of Lebois. *Freeman*, 119 F.3d at 1051 (citation omitted).

First, One57 and Aralpa Miami have been "inadequate[ly] capitaliz[ed]." *Passalacqua*, 933 F.2d at 139. Generally, "a company may be considered undercapitalized when its liabilities exceed its assets, requiring personal loans to meet operating expenses." *Shantou*, 401 F. Supp. 3d at 441 (quotation marks and citation omitted). One57 does no business other than own the New York Property. First Plotnicki Decl. ¶ 7. Aralpa Miami previously owned the Miami Property; presently, it does no business. *Id.* ¶¶ 17-18, 21. For years, One57's bank account has carried a minimal balance, and One57 has used the account solely to pay the mortgage on the New York Property. *Id.* ¶ 11. Similarly, the Aralpa Miami Citibank Account has long carried a minimal balance, and Aralpa Miami has used the account solely to pay the mortgage and property-management fees for the Miami Property (which Aralpa Miami sold only in February 2023, after this case began). *Id.* ¶¶ 21, 23. Much of the money deposited into each of these bank accounts came from Lebois's personal accounts at other financial institutions. *Id.* ¶¶ 13, 25. These facts weigh in favor of veil-piercing. *See, e.g.*, *Rotella v. Dener*, 723 N.Y.S.2d 801, 802 (4th Dep't 2001) (dominated corporation's inability to pay a judgment debt was one piece of evidence justifying veil-piercing); *Austin Powder Co. v. McCullough*, 628 N.Y.S.2d 855, 857 (3d Dep't 1995) (same); *Okapi Partners, LLC v. Holtmeier*, No. 18-cv-06381 (PKC), 2019 WL 1517553, at *2, *4 (S.D.N.Y. Apr. 8,

31

2019) (veil-piercing justified where dominated corporation "never had regular operating income and shared its office space with other companies affiliated with defendants," "held total assets worth approximately $319," and "relied wholly on the defendants' capital contributions in order to meet its obligations," including payments from a personal bank account); *UBS Sec.*, 2011 WL 781481, at *4-5 ("UBS further alleges that Highland Financial completely controlled SOHC . . . and exercised that control to perpetrate a fraudulent scheme against UBS by masking SOHC's under-capitalization, and thereby fraudulently induce UBS to enter into the restructured transaction"; this allegation, combined with others, sufficed to pierce veil).

Second, One57 and Aralpa Miami use Lebois's personal addresses as their own. *See Passalacqua*, 933 F.2d at 139. Lebois has listed the Masaryk Address and the Chapultepec Address as his personal addresses throughout his dealings with Plaintiff, including on the Guaranty. First Plotnicki Decl. ¶ 10. The Masaryk Address and the Castillo Address were listed as One57's addresses on the mortgage documents for the New York Property. *Id.* Likewise, Aralpa Miami has used the Masaryk Address as its address. *Id.* ¶ 17; *see, e.g.*, *Schnell Contracting Sys. L.L.C. v. Empire Outline Builders LLC*, 152 N.Y.S.3d 812, 812 (1st Dep't 2021) (sharing of addresses was one fact supporting piercing of corporate veil); *MPEG LA, L.L.C. v. GXI Int'l, LLC*, 7 N.Y.S.3d 63, 64 (1st Dep't 2015) (same); *Simplicity Pattern Co. v. Miami Tru-Color Off-Set Serv.*, 619 N.Y.S.2d 29, 30 (1st Dep't 1994) (same).

Third, Lebois "pay[s] or guarantee[s] [the] debts of [One 57 and Aralpa Miami]." *Passalacqua*, 933 F.2d at 139. Lebois personally and fully guarantied One57's and Aralpa Miami's mortgages, and he has personally provided much of the money for One57 and Aralpa Miami's mortgage payments on the New York Property and the Miami Property, respectively. First Plotnicki Decl. ¶¶ 9, 13, 20, 25; Opp. at 5-6; ECF No. 78-6 at 3.

Fourth, One57 and Aralpa Miami have property that Lebois has used "as if it were [Lebois's] own." *Passalacqua*, 933 F.2d at 139. Ocejo testifies that the Miami Property "was an investment property" and that "whenever Lebois or his family stayed there, rent was paid to Aralpa Miami." Ocejo Decl. ¶ 4. This fact potentially weighs against piercing the veil of Aralpa Miami, although the Court notes that Ocejo makes no such statement regarding the New York Property and One57. *See generally id.* More importantly, however, Lebois repeatedly listed the New York Property and Miami Property as his assets on personal financial statements provided to Plaintiff. First Plotnicki Decl. ¶ 41. Even if Lebois did not "use" the New York Property and the Miami Property by living in them for free, Lebois certainly "used" these properties as his own when he repeatedly listed them as his assets in documents provided to Plaintiff for the purpose of obtaining favorable changes to the terms of the Note and the Guaranty. *Id.* ¶¶ 26-32, 41-42.

Taken together, these facts show that Lebois dominated One57 and Aralpa Miami, such that Plaintiff may (upon a showing of fraud or wrong) reverse-pierce their corporate veils and enforce the Court's judgment against them. *See, e.g., Last Time Beverage Corp. v. F & V Distrib. Co.*, 951 N.Y.S.2d 77, 81 (2d Dep't 2012) ("In piercing F & V's limited liability company veil and imposing liability on Hornell, the referee and the Supreme Court properly considered several factors, including that: (1) Hornell and F & V had overlapping ownership, officers, and personnel; (2) both companies shared the same office space with other commonly-owned business entities; (3) both companies failed to observe certain formalities such as keeping certain records; and (4) F & V was not adequately capitalized, without a substantial loan from Hornell, to undertake this business venture."); *Ventresca Realty Corp. v. Houlihan*, 838 N.Y.S.2d 609, 610-11 (2d Dep't 2007) ("[T]he corporation was a mere 'dummy' or 'shell' entity created solely for the purpose of signing the lease. The corporation

owned no assets, held no investments, conducted no business, had no employees, did not

possess its own telephone line, and had no income other than the funds periodically

contributed to it by the individual defendants so that its monthly rent obligation could be

met.  Moreover, the corporation held no regular meetings, maintained no corporate records or

minutes, was inadequately capitalized, and apparently held no regular elections of directors

and officers."); *CC Ming (USA) Ltd. P'ship v. Champagne Video Inc.*, 648 N.Y.S.2d 21, 22

(1st Dep't 1996) ("[T]he domination and control were complete.  The tenant kept no corporate

records, had no capitalization, held no assets other than the lease in issue, commingled its

funds with defendant and had the same shareholders, officers, and directors, namely, the

individual defendants."); *Motorola Credit Corp. v. Uzan*, 739 F. Supp. 2d 636, 640 (S.D.N.Y.

2010) ("Cem Uzan owns 100% of Libananco, directly or indirectly, and the former sole

shareholder and still director is his long-time lieutenant, Turkkan.  Moreover, when it suited

their purpose (to make a claim in another proceeding), the Uzans freely admitted to their

ownership and control of Libananco.  Given the proven ways in which the Uzans and their

associates have operated collectively, the Court concludes that all of the individual defendants

have exercised complete control and dominion over Libananco." (citation omitted)).

    Nonmovants point out that Lebois's daughter, Ocejo, states in a declaration that "[a]s

Manager of Aralpa Miami . . . and One57," she "handle[s] all operational matters and

decisions for those companies."  Ocejo Decl. ¶ 6; *see, e.g.*, Opp. at 6.  But Lebois is *also* listed

as a Manager in the operating agreements for One57 and Aralpa Miami.  *See* One57 Operating

Agreement § 6; Aralpa Miami Operating Agreement § 1.  And Nonmovants have submitted

no evidence stating that Lebois has relinquished his "authori[ty] to execute any and all

documents on behalf of [One57] necessary or appropriate in connection with the acquisition,

financing, operation, management or development of the Property or any other property of

34

[One57]," One57 Operating Agreement § 6, or his "full and complete authority, power[,] and discretion to manage and control the business, affairs[,] and properties of [Aralpa Miami], to make all decisions regarding those matters[,] and to perform any and all other acts or activities customary or incident to the management of [Aralpa Miami's] business," Aralpa Miami Operating Agreement § 5.1; *see* Hr'g Tr. at 50:23-51:2 (counsel for One57 acknowledging that the Ocejo Declaration does not make any representations about Lebois's continued role as a Manager of One57). Ocejo's testimony about her role does not undermine the conclusion that – as exemplified by Lebois's repeated representations to Plaintiff between 2020 and 2022 that the New York Property and the Miami Property were his property – Lebois "exercise[s] considerable authority over [One 57 and Aralpa Miami] to the point of completely disregarding the corporate form and acting as though [the] assets [of One 57 and Aralpa Miami] [a]re his alone to manage and distribute, [such that] he is appropriately viewed as [the] equitable owner [of One 57 and Aralpa Miami] for veil-piercing purposes." *Freeman*, 119 F.3d at 1051 (ellipsis, quotation marks, and citation omitted).

Turning to the second aspect of the veil-piercing analysis, Lebois's domination of One57 and Aralpa Miami "was used to commit a fraud or wrong against [Plaintiff] which resulted in [P]laintiff's injury." *Cortlandt*, 96 N.E.3d at 203 (citation omitted). This requirement "can be satisfied either by showing outright fraud, or another type of wrong, such as a breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 649 (S.D.N.Y. 2018) (quotation marks and citation omitted). "The law requires only that the shareholder's wrongdoing 'resulted in' [the] plaintiff's injury," not that the injuries suffered by the plaintiff "were caused by the [shareholder's] wrongful conduct to the exclusion of all

other possible influences." *Lakah v. UBS AG*, No. 07-cv-02799 (LAP), 2017 WL 7245365, at

*91 (S.D.N.Y. Feb. 14, 2017) (quoting *Morris*, 623 N.E.2d at 1161).

Of course, "a simple breach of contract, without more, does not constitute a fraud or

wrong warranting the piercing of the corporate veil." *Etage Real Est. LLC v. Stern*, 182

N.Y.S.3d 47, 49 (1st Dep't 2022) (citation omitted).  But the unopposed evidence in the

record shows that Plaintiff provided the credit facility to Aralpa Holdings (and subsequently

amended the Note and the Guaranty) because it believed that, if Aralpa Holdings defaulted on

the Note, Plaintiff could seek recourse against the assets of Lebois, Aralpa Holdings's

guarantor.  First Plotnicki Decl. ¶¶ 28, 31-32, 42.  Significantly, Lebois listed the New York

Property and the Miami Property as his assets on his personal financial statements that he

regularly provided to Citibank as required by the Note and the Guaranty.  *Id.* ¶ 41.  Indeed, for

the New York Property, these representations continued as late as August 2023, when Lebois

(through his attorney) affirmatively offered the New York Property as partial satisfaction of

the debt owed to Plaintiff.  ECF No. 78-25 at 2.  It is immaterial that Plaintiff knew that

One57 was the legal owner of the New York Property, that Aralpa Miami was the legal owner

of the Miami Property, and that Aralpa Capital was the legal owner of One57 and Aralpa

Miami.  *Cf.* Opp. at 8, 20-22.  As Plotnicki testifies without contradiction, Citibank agreed to

its various amendments and extensions "based on Lebois'[s] representations and its

understanding that Lebois ultimately owned the[] assets [listed on his personal financial

statements] and they could be used to repay the loan if Aralpa Holdings did not repay it."

First Plotnicki Decl. ¶ 42.

Simply put, Lebois marshalled the assets of One57 and Aralpa Miami and claimed

those assets as his own when it benefitted him (such as when he sought waivers and

amendments to the Note and the Guaranty), only to disclaim any control over One57, Aralpa

Miami, and their assets when a creditor came calling.  This sort of judgment-proofing is a well-recognized "fraud or wrong" that authorizes piercing the veil.  *See, e.g.*, *Dafeng Hengwei Textile Co. v. Liu*, 720 F. App'x 83, 85 (2d Cir. 2018) (summary order) ("The stripping of corporate assets by shareholders to render the corporation judgment proof constitutes a fraud or wrong justifying piercing the corporate veil." (quoting *Godwin Realty Assocs. v. CATV Enters., Inc.*, 712 N.Y.S.2d 39, 41 (1st Dep't 2000))); *Grigsby v. Francabandiero*, 58 N.Y.S.3d 835, 837 (4th Dep't 2017) (veil-piercing was proper where sole owner, officer, and member of an LLC "took actions calculated to make [the LLC] judgment-proof by undercapitalizing the LLC, and dissolving and thereafter diverting the assets of [the LLC] to a new entity, without reserving funds to satisfy the judgment debt" (citations omitted)); *Baby Phat Holding Co. v. Kellwood Co.*, 997 N.Y.S.2d 67, 70 (1st Dep't 2014) ("with respect to the transaction at issue, defendant dominated and controlled the negotiations on behalf of PFLLC and actually provided the erroneous information which persuaded plaintiff to enter into the agreement"; having "misrepresented the value of the assets sold and then caused PFLLC to become judgment proof," "defendant perpetrated a wrong or injustice against plaintiff, thus warranting intervention by a court of equity"); *Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, No. 00-cv-02798 (DLC), 2002 WL 31885795, at *11 (S.D.N.Y. Dec. 27, 2002) ("[A]mong the numerous unexplained intercompany transfers documented in the general ledgers were transfers designed to drain money from [the dominated corporations] . . . . This activity is sufficient to constitute a fraud or wrong for purposes of piercing the corporate veil."); *Thrift Drug v. Prescription Plan Serv. Corp.*, 1 F. Supp. 2d 387, 388 (S.D.N.Y. 1998) (defendant committed requisite fraud or wrong because his "sole reason for creating and maintaining these corporations was to enable him to conduct his personal business in such a manner that no assets used in the businesses could ever be reached by any creditor").

In traditional veil-piercing cases such as those just cited, the *corporation* seeks to be judgment-proof because the *individual* is holding the assets.  In the reverse-veil-piercing case at bar, the *individual* Lebois is seeking to be judgment-proof with the *corporations* that he dominates, One57 and Aralpa Miami, holding the assets.  But the fundamental principle is the same.  Although "it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners," *Morris*, 623 N.E.2d at 1160, courts will not abide the "perversion of the privilege to do business in a corporate form," *Berkey v. Third Ave. Ry. Co.*, 155 N.E. 58, 61 (N.Y. 1926) (Cardozo, J.).

One57 and Aralpa Miami protest that they "were formed years before Citibank filed its lawsuit in 2022, and well before the Court issued its September 2023 Judgment," so they could not "have been formed to avoid liability for the Judgment because their formation predates the Judgment and this very lawsuit."  Opp. at 20.  This is a red herring.  Under New York law, the relevant inquiry is not whether a corporation was *formed* to commit a fraud or wrong, but whether a corporation "was *used* to commit a fraud or wrong."  *Cortlandt*, 96 N.E.3d at 203 (citation omitted; emphasis added); *see, e.g.*, *Micro Fines Recycling Owego, LLC v. Ferrex Eng'g, Ltd.*, No. 17-cv-01315 (LEK), 2019 WL 1762889, at *8 (N.D.N.Y. Apr. 22, 2019) ("While the security agreement between 1199541 and Ferrex precedes this dispute by several years, . . . Defendants need not have hatched the scheme with a particular plaintiff in mind."); *Thrift Drug*, 1 F. Supp. 2d at 388 (it did not matter whether the defendant "had any animus against this particular plaintiff" because "the plaintiff was clearly a part of the class of potential creditors against whom [the defendant's] use of UPA (and the other 'phantom' corporations) was directed").

*Guptill Holding Corp v. New York*, 307 N.Y.S.2d 970 (3d Dep't 1970), *aff'd*, 292 N.E.2d 782 (N.Y. 1972), cited by Nonmovants, does not require a contrary result.  In that

case, the state of New York sought to pierce the corporate veil to enforce a tax lien against an individual who had received a condemnation award. *See id.* at 972. The court held that there was "neither a showing nor finding of fraud or illegality" sufficient to justify veil piercing. *Id.* at 973. To be sure, the court noted that the company's formation "well before the condemnation . . . negate[d] any inference that it was formed merely as a shell to hold the condemnation award immune from satisfaction of [the individual's] personal tax liability." *Id.* But the court did not hold that, for the veil to be pierced, a corporation must be formed close in time to the fraud or wrong, or formed in order to commit the fraud or wrong. Rather, it stressed that "[t]he only apparent wrong [wa]s [the individual's] failure to pay his income taxes," which it deemed inadequate to warrant piercing the veil. *Id.*

One57 and Aralpa Miami also contend that the Court should reject Plaintiff's attempt to execute the judgment against their assets because "Citibank must reverse pierce the corporate veil of Aralpa Capital before it may even attempt to reach [One57 or Aralpa Miami]." Opp. at 11. They rely solely on a statement in *Soroof Trading Development Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 151 n.9 (S.D.N.Y. 2012), that "it is necessary to pierce the corporate veil at each level or layer of ownership" (quotation marks omitted). But *Soroof*'s statement on this point relied on a Texas bankruptcy court's interpretation of Delaware law, *see In re Heritage Org.*, 413 B.R. 438, 514 (Bankr. N.D. Tex. 2009), and some courts in this Circuit – while declining to reach the issue – have expressed uncertainty about whether *Soroof* and *In re Heritage*'s every-level requirement is correct as a matter of Delaware law (let alone as a matter of New York law), *see In re Servicom, LLC*, Nos. 18-31722 et al., 2021 WL 825155, at *21 (Bankr. D. Conn. Feb. 24, 2021); *In re BH S & B Holdings LLC*, 420 B.R. 112, 135 (Bankr. S.D.N.Y. 2009), *aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011). In any event, Aralpa Miami's argument approaches the veil-piercing

issue at play here from the wrong angle.  Plaintiff is seeking to reverse-pierce One57 and

Aralpa Miami through Lebois based on Lebois's equitable ownership of One 57 and Aralpa

Miami, respectively, *not* to reach One57 or Aralpa Miami through Aralpa Capital.  Whether

Plaintiff can *also* pierce Aralpa Capital is not relevant to this inquiry.

   For these reasons, Plaintiff may reverse-pierce the veils of One57 and Aralpa Miami.

### IV.   Plaintiff is Entitled to a Writ of Execution and a Turnover Order for the Assets of One57 and Aralpa Miami

   Plaintiff seeks "a writ of execution pursuant to Federal Rule of Civil Procedure 69 and

New York Civil Practice Law and Rules Section 5230 with respect to the [New York

Property]" and "an order pursuant to Federal Rule of Civil Procedure 69 and New York Civil

Practice Law and Rules Section 5225(b) directing One57 . . . to pay to Citibank the assets in

its Citibank account numbered xxxxxxxx3775 and directing Aralpa Miami . . . to pay to

Citibank the assets in its UBS brokerage account[] numbered xxxx767 . . . and Citibank

account numbered xxxxxxxx3328."  OSC at 1-2.  The Court grants Plaintiff's requested relief

in full.  Indeed, Nonmovants make no argument that, if Plaintiff successfully pierces the veils

of One57 and Aralpa Miami, Plaintiff is not entitled to this relief.

   "A money judgment is enforced by a writ of execution, unless the court directs

otherwise.  The procedure on execution – and in proceedings supplementary to and in aid of

judgment or execution – must accord with the procedure of the state where the court is

located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69(a)(1).  "New

York procedure for enforcement of judgments is set out in Article 52 of the Civil Practice

Law and Rules."  *All. Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16,

20 (2d Cir. 1999).  "Article 52 authorizes a judgment creditor to file a motion against a

judgment debtor to compel turnover of assets or, when the property sought is not in the

possession of the judgment debtor himself, to commence a special proceeding against a garnishee who holds the assets." *Koehler v. Bank of Berm. Ltd.*, 911 N.E.2d 825, 828 (N.Y. 2009); *see* N.Y. C.P.L.R. § 105(i), (l)-(m) (defining "garnishee," "judgment creditor," and "judgment debtor").  In federal court, "a party seeking a money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX*, 879 F.3d at 469.

With respect to the New York Property, the relevant provision in Article 52 is CPLR § 5230, which "sets forth the exact procedure a creditor must use to command the Sheriff to execute upon and sell a debtor's property to satisfy a money judgment." *Liggett v. Pichler*, 534 N.Y.S.2d 973, 976 (1st Dep't 1988); *see Stamen Bldg. Materials Corp. v. Gould*, 359 N.Y.S.2d 394, 395 (Dist. Ct. 1974) ("CPLR § 5230 outlines the procedure which must be followed in order to execute on a judgment debtor's interest in real property.").  For a writ of execution to issue, "§ 5230 requires a creditor to show that the debtor 'has an interest' in the property." *Maricultura del Norte, S. de R.L. de C.V. v. WorldBusiness Cap., Inc.*, No. 14-cv-10143 (CM), 2020 WL 747207, at *8 (S.D.N.Y. Feb. 14, 2020) (quoting N.Y. C.P.L.R. § 5230(a)).  Plaintiff has made that showing here because Lebois and One57 are alter egos of one another and, therefore, Lebois has an interest in the property of One57.  Thus, the Court authorizes the issuance of a writ of execution with respect to the New York Property.

As for the One57 Citibank Account, the Aralpa Miami Citibank Account, and the Aralpa Miami UBS Account, the relevant provision of Article 52 is CPLR § 5225(b), which allows "a judgment creditor to recover 'money or other personal property' belonging to a judgment debtor 'against a person in possession or custody of money or other personal property in which the judgment debtor has an interest' in order to satisfy a judgment." *Sirotkin v. Jordan, LLC*, 35 N.Y.S.3d 443, 444-45 (2d Dep't 2016) (citation omitted).  "By its

express language, [CPLR § 5225(b)] provides for a two-step analysis in determining whether property belonging to a judgment debtor – but in the possession of a third party – should be turned over to a judgment creditor." *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991). "First, it must be shown that the judgment debtor 'has an interest' in the property the creditor seeks to reach." *Id.* This requirement is met here for substantially the same reasons already stated regarding the New York Property: One57 and Aralpa Miami are alter egos of Lebois, so Lebois has interests in the property of One57 and Aralpa Miami. "Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either that the judgment debtor is 'entitled to the possession of such property,' *or* it must find that 'the judgment creditor's rights to the property are superior' to those of the party in whose possession it is." *Id.* The Court finds that One57 and Aralpa Miami (who are treated as identical to their alter ego, the judgment-debtor Lebois) are "entitled to the possession" of the money in their bank accounts. *Id.* Therefore, the Court authorizes the issuance of turnover orders with respect to the bank accounts.

Because the Court has granted Plaintiff's motion for a writ of execution and a turnover order as to the New York Property, the One57 Citibank Account, the Aralpa Miami Citibank Account, and the Aralpa Miami UBS Account, Plaintiff's motion for attachment of those assets is now moot. *See* Hr'g Tr. at 22:17-25 (counsel for Plaintiff agreeing that granting a writ of execution would moot the request for attachment).

## V. Motion to Compel

Plaintiff further seeks to compel Lebois to comply with the information subpoena served upon him after the judgment was entered. *See* Fed. R. Civ. P. 69(a)(2) ("In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as

42

provided in these rules or by the procedure of the state where the court is located."); N.Y.

C.P.L.R. §§ 5222, 5224.  Lebois did respond to the information subpoena, but the parties spar

about whether Lebois's responses were sufficient and fully complied with his post-judgment

discovery obligations under CPLR §§ 2308(b) and 5224(a)(3)(iv).  *Compare* Br. at 24-25, *and*

Reply at 10, *with* Opp. at 24.

As the colloquy at the OSC hearing demonstrated, *see* Hr'g Tr. at 62:22-70:13, there is

disagreement with respect to the meanings of various terms in the requests, and the parties

would benefit from meeting and conferring about post-judgment discovery responses before

asking the Court to step in and police these matters.  Accordingly, the Court denies Plaintiff's

motion to compel without prejudice to renewal should the parties be unable to resolve their

issues without the Court's intervention.  By February 16, 2024, the parties shall meet and

confer about Lebois's responses to Plaintiff's post-judgment discovery requests.

**VI.    Sealing**

In making its *ex parte* motion, Plaintiff sought and received permission to file its brief,

supporting declarations and attached exhibits, and proposed OSC under seal.  ECF No. 75; *see*

ECF Nos. 75-80.  On January 10, 2024, the Court ordered that "[b]y January 17, 2024, the

parties shall jointly inform the Court as to which documents presently under seal should, in

their view, remain under seal.  By the same date, for any document so identified, the parties

shall submit a redacted version."  ECF No. 89.  The Court instructed that, "[g]iven the

presumption of public access to judicial documents, . . . documents shall be redacted and/or

withheld to the minimal extent necessary to protect the parties' legitimate interests."  *Id.*; *see*

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016)

(judicial documents are subject to a presumption of public access); *Gambale v. Deutsche Bank*

*AG*, 377 F.3d 133, 140-42 (2d Cir. 2004) (a district court may act *sua sponte* to unseal judicial documents).

On January 17, 2024, the parties filed a joint letter regarding sealing and proposed redactions. ECF No. 95 (the "Joint Letter"). Nonmovants requested certain redactions to the Opening Brief, the First Plotnicki Declaration, and the Meza Declaration. *See id.* at 1. Nonmovants also requested that certain exhibits to the First Plotnicki Declaration and the Meza Declaration remain under seal, specifically: ECF Nos. 78-5, 78-7, 78-8, 78-12 through 78-14, 78-19 through 78-24, 78-27, 79-2, 79-3, 79-5 through 79-8, and 79-11 (collectively, the "Documents at Issue"). Joint Letter at 1-2. Plaintiff did not object to Nonmovants' requests to redact and seal. *Id.* at 2. When Plaintiff filed the Reply Brief two days later, it redacted information that Nonmovants had, in the Joint Letter, also requested be redacted in the Opening Brief. *See* Reply at 9.

Nonmovants argued on behalf of its redaction and sealing requests at the OSC hearing. Hr'g Tr. at 71:21-73:24. Upon considering the Joint Letter, Nonmovants' oral argument, and the relevant facts and law, the Court makes the following rulings.

To start, the Court orders that, excluding the Documents at Issue, all documents currently under seal at ECF Nos. 75 through 80, including attachments thereto, shall be unsealed. The Court so orders because no party or nonparty requests that any of the documents remain sealed, and the presumption of public access to judicial documents favors unsealing them. *See Coscarelli v. ESquared Hosp. LLC*, No. 18-cv-05943 (JMF), 2020 WL 6802516, at *3 (S.D.N.Y. Nov. 19, 2020) (granting plaintiffs' "motion to unseal all exhibits filed at ECF No. 196" because "Defendants fail[ed] to indicate their position on Plaintiffs' motion," so it was deemed "unopposed"); *Bertuglia v. City of New York*, No. 11-cv-02141

(JGK), 2014 WL 626848, at *2 (S.D.N.Y. Feb. 18, 2014) ("Given that the plaintiffs'
application for an unsealing order is unopposed, it should be granted.").

The Court now turns to the Documents at Issue. "The common law right of public
access to judicial documents is firmly rooted in our nation's history." *Stafford v. Int'l Bus.
Machs. Corp.*, 78 F.4th 62, 69 (2d Cir. 2023) (citation omitted). "The presumption of access
is based on the need for federal courts, although independent – indeed, particularly because
they are independent – to have a measure of accountability and for the public to have
confidence in the administration of justice." *Id.* (citation omitted); *accord In re Orion
Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994) (the "strong presumption of public access to
court records . . . helps safeguard the integrity, quality, and respect in our judicial system"
(quotation marks and citation omitted)).

The Second Circuit takes a three-step approach to sealing. "First, the court determines
whether the record at issue is a 'judicial document' – a document to which the presumption of
public access attaches." *Stafford*, 78 F.4th at 69-70 (citation omitted). "Second, if the record
sought is determined to be a judicial document, the court proceeds to determine the weight of
the presumption of access to that document." *Id.* at 70 (quotation marks and citation omitted).
"Third, the court must identify all of the factors that legitimately counsel against disclosure of
the judicial document, and balance those factors against the weight properly accorded the
presumption of access." *Id.*

At the first step of the sealing analysis, all of the Documents at Issue are judicial
documents. *See id.* at 69-70. "A 'judicial document' or 'judicial record' is a filed item that is
relevant to the performance of the judicial function and useful in the judicial process."
*Bernstein*, 814 F.3d at 139 (further quotation marks and citation omitted). In this case,
Plaintiff submitted the Documents at Issue to support its motion for the issuance of a writ of

execution and turnover order, for attachment, for an order to show cause, and for an order

compelling Lebois to respond to an information subpoena.  While much of the information is

financial information, this action is a commercial dispute involving execution of a money

judgment against the assets of various individuals and entities, and therefore the documents

are plainly "relevant to the performance of the judicial function and useful in the judicial

process."  *Id.* (citation omitted).  Indeed, the Court has relied on many of these documents in

issuing the initial TRO, in extending the TRO, and in ruling on the present OSC.

The second step of the analysis considers the weight of the presumption in favor of

access.  *See Stafford*, 78 F.4th at 70.  "The weight of the presumption is a function of (1) the

role of the material at issue in the exercise of Article III judicial power and (2) the resultant

value of such information to those monitoring the federal courts, balanced against competing

considerations such as the privacy interests of those resisting disclosure."  *Bernstein*, 814 F.3d

at 142 (quotation marks and citation omitted).  "[W]here documents directly affect an

adjudication or are used to determine litigants' substantive legal rights, the presumption of

access is at its zenith and thus can be overcome only by extraordinary circumstances."  *Id.*

(quotation marks and citations omitted).  The Second Circuit has also held that a document

"submitted to a court in connection with a summary-judgment motion is entitled to a strong

presumption of access."  *Id.*  Although Plaintiff's motion here was not a summary-judgment

motion, courts have analogized a Rule 69 proceeding like this to summary judgment.  *See*

*CSX*, 879 F.3d at 473; *Major League Baseball*, 2023 WL 2625794, at *3.

Many of the Documents at Issue – including One57 and Aralpa Miami's wire-transfer

confirmations and Lebois's personal financial statements – directly affected the adjudication

of the post-judgment proceedings and were used to determine substantive legal rights.  Indeed,

as this decision illustrates, the veil-piercing analysis necessarily entails a close examination of

the financial particulars of Lebois, One57, and affiliated individuals and entities.  *See MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 64 (2d Cir. 2001) ("[D]etermining whether to pierce the corporate veil is a very fact specific inquiry involving a multitude of factors.").  And the information contained in the Documents at Issue is valuable to citizens seeking to monitor the work of the federal courts, as is their right and civic duty.  Nonmovants have also not persuaded the Court that extraordinary circumstances are present here that would justify keeping many of the Documents at Issue under seal.

On the other hand, some of the Documents at Issue did not play a significant role in the Court's decision, such that their "role in the performance of Article III duties [wa]s negligible."  *Bernstein*, 814 F.3d at 142 (quotation marks and citation omitted).  For example, the Court did not rely on many of the documents attached to the Meza Declaration because of admissibility concerns.  *See supra* n.1.  Thus, those documents were not "used to determine litigants' substantive legal rights."  *Bernstein*, 814 F.3d at 142.

At the third step, the Court "must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access."  *Stafford*, 78 F.4th at 70 (citation omitted).  The only countervailing factor that Nonmovants cite are their privacy interests.  It is true, as Nonmovants note, that "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public."  *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995).  But this general principle does not mean that financial records are wholly immune from public access.  The present judicial proceeding involves the execution of a money judgment against Lebois; documents and evidence regarding his finances, as well as the finances of those entities deemed his alter egos,

47

are directly relevant.  And Nonmovants have not argued, for example, that any of the Documents at Issue could benefit "[c]ommercial competitors," that disclosure would aid "personal vendettas," or that the information is not "reliab[le]."  *Id.*  Meanwhile, on the other side of the balance is the public's well-established interest in having access to documents involved in judicial proceedings.  The Court finally notes that these documents were filed under seal because of the *ex parte* procedural posture, not because the Court provisionally deemed them worth sealing based on their contents.

For these reasons, the Court makes the following rulings on the Documents at Issue:

- The proposed redactions of the Opening Brief, the First Plotnicki Declaration, the Meza Declaration, and the Reply Brief are REJECTED.  These redactions encompass information about Lebois's claimed wealth at various points in time, the purported value of certain assets, the amount of money in One57 and Aralpa Miami's bank accounts, and related topics.  The information that Nonmovants request the Court to redact was relevant to, and played a significant role in, the Court's decisions to grant the TRO,[7] to extend the TRO, and to issue the writ of execution and turnover order.  The Court finds that the presumption of public access to these documents outweighs the privacy interests at stake.  By February 9, 2024, Plaintiff shall file an unredacted version of the Reply Brief.

- The requests to keep under seal the documents at ECF Nos. 78-5, 78-7, 78-8, 78-12 through 78-14, and 78-19 through 78-24 are DENIED.  These documents include: a copy of the closing and disbursement instructions for the mortgage on the New York Property; documents related to the One57 Citibank Account, the Aralpa Miami Citibank Account, and the Aralpa Miami UBS Account; and the financial statements that Lebois submitted to Plaintiff under the terms of the Note and the Guaranty.  The documents were relevant to, and played a significant role in, the Court's decisions to grant the TRO, to extend the TRO, and to issue the writ of execution.  The Court finds that the presumption of public access to these documents outweighs the privacy interests at stake.  The Court notes that many of these documents, as filed under seal, already have sensitive personal information redacted (such as bank-account numbers).  The Court finds that these redactions are appropriately limited to protect Nonmovants' legitimate privacy interests.  The Court also notes that, in the Joint Letter and at oral argument, Nonmovants never

---

[7] *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) ("[H]earsay evidence may be considered by a district court in determining whether to grant a preliminary injunction.").

suggested that – if the Court were to unseal these documents – any further redactions would be necessary.

- The request to keep under seal the document at ECF No. 78-27 is GRANTED. This document contains Lebois's responses and objections to Plaintiff's post-judgment information subpoena. This document played little or no role in, the Court's decisions to grant the TRO, to extend the TRO, and to issue the writ of execution and turnover order. Nonmovants did not rely on the responses and objections for purposes of the OSC hearing. The Court has also made no decision with respect to the motion to compel. Further, as the parties note, this document is subject to the Court's previously entered protective order concerning post-judgment discovery. Joint Letter at 1 n.3; *see* ECF Nos. 73-74. Without question, the Court is free to modify that protective order. *See Gambale*, 377 F.3d at 141 ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it." (citation omitted)). But the Court does not believe that doing so is necessary here.

- The requests to keep under seal the documents at ECF Nos. 79-2, 79-3, 79-5 through 79-8, and 79-11 are GRANTED. These documents, all attached to the Meza Declaration, were not significantly relevant to, and played little or no role in, the Court's decisions to grant the TRO, to extend the TRO, and to issue the writ of execution and turnover order. The pertinent privacy interests therefore assume a more prominent position in the weighing calculus and, in the Court's view, warrant keeping these documents sealed.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that:

- Plaintiff's motion for the issuance of a writ of execution pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules Section 5230 with respect to the real property located at 157 West 57th Street, Unit 36B, New York, New York is **GRANTED**;

- Plaintiff's motion for the issuance of an order pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules Section 5225(b) directing One57 to pay to Plaintiff the assets in its Citibank account numbered xxxxxxxx3775 and directing Aralpa Miami to pay to Plaintiff the assets in its UBS brokerage account numbered xxxx767 and Citibank account numbered xxxxxxxx3328 is **GRANTED**;

- Plaintiff's motion for an order of attachment pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules Section 5201(b) with respect to all property, wherever, located, of One57 and Aralpa Miami is **DENIED** as moot;

- Plaintiff's motion for an order pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules Sections 5224(a)(3)(iv) and

SPA-50

2308(b) compelling Rodrigo Lebois Mateos to provide responses to the information subpoena served on him is **DENIED** without prejudice, and the parties shall meet and confer about the responses to Plaintiff's post-judgment discovery requests by **February 16, 2024**; and

- Plaintiff shall file an unredacted version of the Reply Brief (ECF No. 96) by **February 9, 2024**.

The Clerk of Court is respectfully directed to unseal – that is, convert to public view,

with no restrictions – all docket entries (including attachments) at ECF Nos. 75 through 80,

except for ECF Nos. 78-27, 79-2, 79-3, 79-5, 79-6, 79-7, 79-8, and 79-11.

Dated: February 2, 2024
       New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge

50